[Crim. No. 18659. In Bank. Feb. 4, 1976.]

In re ROBERT MICHAEL COUGHLIN on Habeas Corpus.

## COUNSEL

Jay J. Plotkin, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Respondent.

John E. Howard, Acting District Attorney (Los Angeles), Harry B. Sondheim and Jay J. Becker, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

## OPINION

**RICHARDSON, J.**—In the present case, and in the companion case of *In re Dunham, post,* page 63 [127 Cal.Rptr. 343, 545 P.2d 255], we consider whether a court, at a probation revocation hearing, or the Adult Authority, at a parole revocation hearing (*Dunham*), may properly consider evidence indicating that the probationer or parolee has committed another criminal offense during the period of his probation or parole, despite the fact that he was acquitted of the criminal charge at trial. We have concluded that the consideration of such evidence (together with all other evidence bearing upon the question of the offender's right to probation or parole) is properly admissible at the revocation hearing. To hold otherwise, under some novel application of the doctrines of res judicata or double jeopardy, would have the unfortunate consequence of depriving the decision-making body of information which might be essential to an appropriate disposition of the matter. Although the offender must be protected from undue harassment, the interest of society in preventing a premature release of the offender from confinement deserves equal, perhaps paramount, attention. Only by examining *all* the available evidence may the decision-making body exercise the informed discretion which the Legislature has conferred upon it.

Petitioner is presently imprisoned at Soledad having been convicted in 1972 of burglary and the receipt of stolen property. (Pen. Code, §§ 459, 496.) On March 12, 1973, following his conviction for these offenses, petitioner was granted probation for a period of four years. On April 5, 1973, petitioner was arrested on a burglary charge. On April 10, 1973, pursuant to information received by petitioner's probation officer, the court summarily revoked probation. A tentative date of April 30, 1973, was set for petitioner's formal revocation hearing; that hearing was continued from time to time until June 7, 1973.

Sometime prior to June 7, 1973, petitioner was acquitted of the pending burglary charge following a trial on the merits in municipal court. On June 7 the probation revocation hearing took place in superior court. The court heard testimony from two witnesses and the arresting officer. Evidently, much of their testimony paralleled their prior testimony at the criminal trial. Petitioner did not testify on his own behalf, and he called no witnesses. Petitioner's counsel objected to the proceedings on the grounds that petitioner had been denied a timely revocation hearing, and that his prior acquittal should bar the revocation proceedings on a "double jeopardy" theory. The court denied both objections.

Following the hearing, the court found that petitioner had violated the terms and conditions of his probation. Explaining its decision, the court stated that: "The Court believes that he [petitioner] did participate in an attempted burglary on the morning of April 5, 1973, even though the evidence might not have been sufficient to convince the Court in the Whittier Municipal Court beyond a reasonable doubt and to a moral certainty of the proof of the charge against the defendant. This Court's convinced that he did, indeed, attempt to burglarize the Candlewood Burger on April 5, 1973, and he thus is in violation of the terms and conditions of probation granted by this Court."

The court ordered petitioner's probation revoked and remanded him to the Department of Corrections to serve his sentence. Petitioner's appeal from the judgment of conviction, including the order revoking probation, was unsuccessful.

Although habeas corpus ordinarily cannot serve as a second appeal, that general rule is primarily a discretionary policy which may be overlooked where "special circumstances" are deemed to exist. (*In re Black* (1967) 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293] [review of order denying probation].) Moreover, it has been held that habeas corpus may be used to challenge the procedure employed during petitioner's trial, where a denial of due process or other fundamental jurisdictional defect is alleged. (See *In re Winchester* (1960) 53 Cal.2d 528, 531 [2 Cal.Rptr. 296, 348 P.2d 904], cert. den. (1960) 363 U.S. 852 [4 L.Ed.2d 1734, 80 S.Ct. 1631]; *People* v. *Adamson* (1949) 34 Cal.2d 320, 327 [210 P.2d 13].) As stated in *Winchester,* "Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final, *even after affirmance on appeal.* [Citation.]." (P. 531, italics added.)

Under petitioner's theory, the trial court's consideration of evidence regarding the burglary offense of which petitioner was acquitted constituted a violation of due process principles and placed him in double jeopardy. Although these asserted violations occurred at a probation revocation hearing, rather than at a trial, the contentions are sufficiently substantial to justify our consideration in the present proceedings, despite petitioner's prior appeal. We note that the Attorney General has not contended that habeas corpus is not a proper remedy in this case.

We turn to the merits of petitioner's claim. Penal Code section 1203.2, subdivision (a), authorizes the court to revoke probation ". . . if the interests of justice so require and the court, in its judgment, *has reason to believe* from the report of the probation officer or otherwise that the person has violated any of the conditions of his probation, has become abandoned to improper associates or a vicious life, *or has subsequently committed other offenses, regardless whether he has been prosecuted for such offenses.*" (Italics added.)

As the language of section 1203.2 would suggest, the determination whether to grant or revoke probation is largely discretionary. (*In re Larsen* (1955) 44 Cal.2d 642, 645 [283 P.2d 1043]; *In re Davis* (1951) 37 Cal.2d 872, 875 [236 P.2d 579].) The correct standard of proof to be used by the trial court in assessing whether there exists "reason to believe" the probationer has violated his probation or committed a new offense has been variously stated (compare *People* v. *Hayko* (1970) 7 Cal.App.3d 604 609 [86 Cal.Rptr. 726] ["clear and satisfactory" proof required] with *People* v. *Coleman* (1975) 13 Cal.3d 867, 877, fn. 8 [120 Cal.Rptr. 384, 533 P.2d 1024] ["clear and convincing" proof required]; see also Evid. Code, § 115 ["proof by a preponderance of the evidence" except as otherwise provided by law]). Yet the authorities are unanimous in concluding that the standard of proof used in a criminal trial, namely the "beyond a reasonable doubt" standard (Pen. Code, § 1096) is inapplicable to the probation revocation hearing. (*People* v. *Ruelas* (1973) 30 Cal.App.3d 71, 74 [106 Cal.Rptr. 132]; *People* v. *Youngs* (1972) 23 Cal.App.3d 180, 188, fn. 6 [99 Cal.Rptr. 901]; *People* v. *Hayko, supra,* at p. 609; *People* v. *Vanella* (1968) 265 Cal.App.2d 463, 470 [71 Cal.Rptr. 152].) Accordingly, probation may be revoked despite the fact that the evidence of the probationer's guilt may be insufficient to convict him of the new offense. (*People* v. *Andre* (1974) 37 Cal.App.3d 516, 521 [112 Cal.Rptr. 438]; *People* v. *Hayko, supra,* at p. 609.) Petitioner does not assert a *quantitative* challenge by contending that the evidence introduced at the

revocation hearing was insufficient to justify revocation. His contention is that the evidence was *inadmissible* by reason of his prior acquittal.

█ It is uniformly held that the *reversal* of a conviction on appeal does not preclude the court from considering the underlying evidence in deciding whether or not to revoke probation. (*People* v. *Rafter* (1974) 41 Cal.App.3d 557, 560-561 [116 Cal.Rptr. 281]; *People* v. *Hayko, supra,* at pp. 609-611; *People* v. *Muniz* (1970) 4 Cal.App.3d 562, 571 [84 Cal.Rptr. 501]; *People* v. *Lynn* (1969) 271 Cal.App.2d 670, 674 [76 Cal.Rptr. 801]; *People* v. *Vanella, supra,* at p. 470.) In *Hayko,* for example, defendant's probation was revoked in reliance upon his conviction of a new offense. Although that conviction was reversed on appeal on the ground that an illegal search and seizure took place, thereby necessitating reconsideration of the probation revocation order, the Court of Appeal ruled that the reversal "does not foreclose further inquiry into the subject matter of that case by the court, and the court may properly determine whether appellant has engaged in conduct which constitutes cause for revocation of probation." (P. 611.) Moreover, the court explained, at the new probation revocation hearing, the trial court would not be precluded from considering evidence which was the product of the illegal search and seizure. (See *In re Martinez* (1970) 1 Cal.3d 641, 650 [83 Cal.Rptr. 382, 463 P.2d 734], upholding the right of the Adult Authority to consider illegally obtained evidence in revoking parole.) The court noted that ". . . the role of a judge in considering the question of whether a convicted offender's probation should be revoked is analogous to the role of the Adult Authority in determining whether a parolee's parole should be revoked. The judge is not determining whether the defendant is guilty or innocent of a crime. Rather, he must determine whether the convicted offender 'can be safely allowed to return to and remain in society.' " (*People* v. *Hayko, supra,* at p. 610, quoting from *Martinez* at p. 650.)

█ In the case before us, unlike the foregoing cases, petitioner was initially acquitted of the new offense. However, we see no satisfactory distinction between this situation and one in which an initial conviction was reversed on appeal. In neither case does the ultimate judgment in defendant's favor necessarily and conclusively establish defendant's innocence or right to probation. An acquittal might well reflect precisely the same defects in proof or procedure which, in another case, would require reversal of a conviction. For example, a judge or jury might acquit a defendant solely because the evidence of his guilt was deemed insufficient, or because the sole credible evidence offered against him was ruled inadmissible, thereby leaving the trier of fact with a reasonable

doubt as to defendant's guilt. Nonetheless, as the foregoing cases illustrate, evidence which is insufficient or inadmissible to prove guilt at trial nevertheless may be considered in determining whether probation should be revoked.

Petitioner relies upon *People* v. *Robart* (1973) 29 Cal.App.3d 891, 893 [106 Cal.Rptr. 51], as establishing the rule that an acquittal bars the court from considering the underlying evidence in the case to establish ground for revocation of probation. In *Robart,* however, probation was modified (increasing the term to be served in jail) following an acquittal on new charges *without holding any hearing whatever* on the nature of the underlying evidence. On the record, according to the Court of Appeal, "There was no reason other than the charges of which he [defendant] was acquitted supporting the revocation of probation." (P. 893.) As declared in *Robart,* a court in revoking or modifying probation cannot rely solely upon the filing of a criminal charge against a defendant, once he has been acquitted of those charges. The proper procedure in the event of an acquittal (or reversal of a conviction) is to hold a new hearing for the purpose of reconsidering the prior revocation or modification order. At such a hearing, as in the case before us, the court may hear *all* pertinent evidence, including evidence which was introduced or excluded at the criminal trial. Defendant must have full opportunity to cross-examine and impeach witnesses, introduce exculpatory evidence, and establish his right to probation.

The foregoing rule is in line with the numerous authorities which hold that, by reason of the difference in standards of proof in criminal and other actions, a prior acquittal in a criminal proceeding does not bar subsequent proceedings based upon the same underlying facts. (*One Lot Emerald Cut Stones* v. *United States* (1972) 409 U.S. 232, 235 [34 L.Ed.2d 438, 442, 93 S.Ct. 489]; *Helvering* v. *Mitchell* (1938) 303 U.S. 391, 397 [82 L.Ed. 917, 920, 58 S.Ct. 630]; *People* v. *Lent* (1975) 15 Cal.3d 481, 487 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Griffin* (1963) 60 Cal.2d 182, 191 [32 Cal.Rptr. 24, 383 P.2d 432]; *Board of Education* v. *Calderon* (1973) 35 Cal.App.3d 490, 495-496 [110 Cal.Rptr. 916]; *Gibson* v. *Gibson* (1971) 15 Cal.App.3d 943, 948 [93 Cal.Rptr. 617]; *Beckner* v. *Sears, Roebuck & Co.* (1970) 4 Cal.App.3d 504, 509 [84 Cal.Rptr. 315]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 183, p. 3324, and cases cited.) As expressed in *Witkin,* "The long established rule, unchanged by recent cases, denies res judicata effect in a civil proceeding to a prior acquittal in a criminal proceeding. The principal reason is the difference in the degree of proof required in the two proceedings; acquittal in the prior

criminal proceeding merely determines that guilt was not proved beyond reasonable doubt. Mention has also been made of the differences in objects, issues, results, procedures, elements of proof, weight of the evidence, effect of illegally obtained evidence, and parties. [Citations.]" (P. 3324.)

Similar considerations militate against any rule which would preclude the courts from considering, at a probation revocation hearing, evidence concerning an offense of which defendant had been acquitted. As we have seen, the fact of an acquittal establishes only that the trier of fact entertained a reasonable doubt of defendant's guilt. On the other hand, such a doubt, of itself, would not preclude revocation of probation. (*People* v. *Hayko, supra,* at p. 609.) In the instant case, for example, petitioner suggests that he was acquitted because the municipal court judge who tried his case "apparently felt that Mr. Callas [one of the prosecution witnesses who identified petitioner] was too positive in his statements for 5:00 o'clock in the morning." As we have seen, the superior court judge, following the probation revocation hearing, believed otherwise.

The trial court, in determining whether to grant or revoke probation, is faced with a most difficult task. On the one hand, the court must bear in mind the important interest of the offender in securing and maintaining his personal freedom; in a proper case, the decision to grant or continue probation may itself contribute to the rehabilitative process, affording the offender a second chance to prove his ability to function usefully in society. Yet, on the other hand, it is unquestionable that the probation decision necessarily involves an element of risk and consequent potential danger to a society that may be victimized. Premature release from imprisonment may soon result in a repetition of criminal conduct. Thus, decisions involving probation require the exercise of an *informed* discretion, following a careful balancing of the respective interests of the offender and the public generally. Such a delicate balance cannot be achieved by foreclosing the courts from consideration of evidence bearing directly upon the offender's willingness and ability to complete a successful period of probation. As stated in *People* v. *Andre, supra,* 37 Cal.App.3d 516 at pp. 520-521: "Probation and parole are granted in the hope and expectation that the conditional release, under supervision, will better serve to rehabilitate a defendant than would supervised incarceration. The court, or the paroling authority, need not wait until the defendant proves, by new acts of criminality, that the hope and expectation were unfounded. *Acts short of criminality, or evidence which*

*leaves a criminal violation still uncertain, may well, in the judgment of the court or authority, indicate that the hoped for rehabilitation is on the road to complete failure* and that a more restrictive process is required both to protect society and to assist the defendant toward ultimate rehabilitation." (Italics added.)

We are aware that a recent case, *People* v. *Grayson* (1974) 58 Ill.2d 260 [319 N.E.2d 43], certiorari denied, 421 U.S. 994 [44 L.Ed.2d 484, 95 S.Ct. 2001], adopted the position that principles of res judicata and double jeopardy barred "relitigation" of an acquitted defendant's case in a probation revocation proceeding. *Grayson*, a summary, three-page opinion, was based upon the premise that "The acquittal of defendant on the charge of armed robbery was, under the evidence in this case, a determination that he was not one of the robbers." (P. 46.) To the contrary, as the authorities referred to above make clear, "An acquittal is merely an adjudication that the proof at the prior proceeding was not sufficient to overcome all reasonable doubt of the guilt of the accused." (*People* v. *Griffin, supra,* 60 Cal.2d 182 at p. 191.)

We also note that the United States Supreme Court denied certiorari in *Grayson* on the express ground that the decision was based upon an independent state ground which would defeat federal jurisdiction.

We also reject *Grayson's* suggestion that "relitigation" of the offender's prior criminal trial violates constitutional guarantees against double jeopardy. Both federal and California Constitutions forbid placing an accused twice "in jeopardy" for the same offense. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) As we recently explained in *In re Crow* (1971) 4 Cal.3d 613, 623 [94 Cal.Rptr. 254, 483 P.2d 1206], "In criminal cases in which an individual has once been haled before a jury and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment *and prevents a second prosecution* for the same conduct or subject matter." (Italics added; accord, *People* v. *Uhlemann* (1973) 9 Cal.3d 662, 668, fn. 4 [108 Cal.Rptr. 657, 511 P.2d 609]; see *Ashe* v. *Swenson* (1970) 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189]; *One Lot Emerald Cut Stones, supra,* 409 U.S. 232 at p. 235.) In *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779], which extended the double jeopardy guaranty to include criminal prosecutions commenced following juvenile court delinquency proceedings, the court observed that ". . . the risk to which the term jeopardy refers is that traditionally associated with 'actions intended to

authorize criminal punishment to vindicate public justice.' [Citation]."
(P. 529 [44 L.Ed.2d p. 355].)

The probation revocation hearing held in the instant case was not, of course, a second criminal prosecution, nor was it intended to authorize criminal punishment. The proceeding took the form of a trial, with the presence of witnesses and the introduction of evidence, only because due process principles required such a hearing for petitioner's own protection. (See *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], adopting the procedural requirements of *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], for use in probation revocation proceedings.) Yet the sole consequence of revocation of probation is that the offender must commence to serve a term for an offense of which he *previously* was properly convicted. Petitioner's reliance upon *Ashe* v. *Swenson, supra,* is thus misplaced, for as the court in *Grayson* acknowledged, ". . . in *Ashe* the defendant was placed in jeopardy in two separate criminal trials for the same armed robbery, while here defendant was placed in jeopardy only once for the robbery of April 9, 1970 [of which he was acquitted], and then was subject to a civil proceeding where his probation was revoked. Defendant was then ordered imprisoned not for the [April 9] Lukas robbery but for the offense for which he was originally granted probation." (319 N.E.2d at p. 45.)

The petition in this case sets forth other contentions in addition to the res judicata-double jeopardy issue discussed above. We have examined the record and find that none of these contentions has merit. Petitioner contends that his probation was summarily revoked without affording him an immediate prerevocation hearing. Although summary revocation of probation is not proper in every case (see *People* v. *Vickers, supra,* 8 Cal.3d 451, 460-461), a prerevocation hearing is not ordinarily required where revocation is based upon the commission of a new offense, and the accused has a timely opportunity to contest the new charges. (See *People* v. *Coleman, supra,* 13 Cal.3d 867, 894-895.) In the present case, petitioner's probation was summarily revoked on April 10, 1973, the pending criminal charges were tried within two months thereafter, and the formal revocation hearing was held on June 7, 1973. The two months' delay in holding the revocation hearing does not appear unreasonable per se (see *Coleman,* at p. 896), and petitioner fails to demonstrate any prejudice from the delay (cf. *In re La Croix* (1974) 12 Cal.3d 146, 154-155 [115 Cal.Rptr. 344, 524 P.2d 816]).

The order to show cause is discharged, and the petition for a writ of habeas corpus is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.