[Crim. No. 29817. Second Dist., Div. Three. Mar. 30, 1977.]

In re DAVID B., a Minor, on Habeas Corpus.

932

## COUNSEL

Wilbur F. Littlefield, Public Defender, John J. Gibbons, Michael Allensworth and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Respondent.

**OPINION**

**POTTER, J.**—In this habeas corpus proceeding, the minor challenges the validity of an adjudication order of September 16, 1976, of the Riverside County Superior Court which was based upon the minor's admissions that he had committed violations of section 10852 of the Vehicle Code (tampering with a car) and section 449a of the Penal Code (arson). The validity of the admissions was attacked upon the dual grounds that the nature of the arson offense was not adequately explained and that the consequences of the admissions were insufficiently explained to the minor, who was not told either the nature of or the possible duration of the California Youth Authority commitment which might result.

After the adjudication in Riverside County, the juvenile proceeding was transferred to Los Angeles County. The minor's motion to return the matter to Riverside County for further proceedings was denied and at a disposition hearing of November 5, 1976, the referee made a disposition order committing the minor to the California Youth Authority. A de novo rehearing before the juvenile court judge was held on December 16, 1976. At this time the court ruled that it did not have jurisdiction to review the determination of wardship made by the Riverside court and thus found the admissions valid. The minor was again committed to the California Youth Authority.

Based on the petition to this court, an order to show cause was issued on February 2, 1977, commanding the juvenile court either to vacate the September 16, 1976, adjudication order and the December 16, 1976, commitment order and "in said matter, hold a new adjudication hearing" or, in the alternative, show cause why a writ of habeas corpus should not issue.

On March 4, 1977, the juvenile court conducted a hearing on the validity of the adjudication order. As a result of that hearing, the court found "that minor's constitutional waivers were defective and that said waivers failed to comply with *In re Tahl,*" and based on such invalidity the court ordered that the September 16, 1976, adjudication order and the December 16, 1976, order committing minor to the California Youth Authority "are vacated and set aside." On said date the court further ordered that a suitable placement order in another proceeding previously consolidated with the instant proceeding should remain in effect and the matter was continued to March 18, 1977, "for 15 day review."

By supplemental petition filed March 9, 1977, seeking a writ of mandate and/or prohibition, minor has called the court's attention to the fact that on March 7, 1977, in respondent court, a new petition alleging the same incidents involved in the Riverside petition was filed, the minor was arraigned on the new petition and the matter was set for adjudication on March 23, 1977. Contemporaneously, the district attorney filed a notice of fitness hearing and the fitness hearing was likewise set for March 23, 1977. The supplemental petition sought to restrain the court from conducting a new fitness hearing upon the basis (1) that the original fitness determination made in the Riverside proceeding, of which no review was sought, was res judicata, and (2) that the relitigation of the fitness question with the potential for increased incarceration should the minor be found not amenable to juvenile court treatment, violated due process of law guaranteed by the Constitution of the United States and the Constitution of California by the chilling effect which it placed upon the minor's right to review the jurisdictional determination.

The juvenile court's order of March 4, 1977, has rendered this proceeding moot insofar as it sought vacation of the September 16 adjudication order and the disposition order based thereon. The entire matter, however, is not moot inasmuch as the juvenile court has not carried out that portion of the order to show cause which specified that upon vacating the adjudication and disposition orders that said court "in said matter, hold a new adjudication hearing." The conduct of an adjudication hearing necessarily implies that the minor is amenable to juvenile court treatment; since January 1, 1976, Welfare and Institutions Code section 707 has prohibited the taking of a plea to the petition until any challenge of the minor's fitness is disposed of. The filing and consideration of a new petition and any consideration anew of the question of minor's amenability to juvenile court treatment constitutes circumvention of rather than compliance with the order to show cause. We must, therefore, consider what order of this court is appropriate to govern the further conduct of the original proceedings which are before this court on the petition for writ of habeas corpus.

The principles governing the propriety of permitting the district attorney to refile and to reopen the question of minor's amenability to juvenile court treatment are stated in the most recent opinion of the United States Supreme Court in dealing with such matters. In *Blackledge v. Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098], the federal due process clause was held to preclude state action chilling a defendant's right to review a misdemeanor conviction by trial de novo in the

superior court by the prosecutor adding a felony count based on the same incident: In so holding, the court said (417 U.S. at pp. 27-29 [40 L.Ed.2d at pp. 634-635]):

"The lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' *Unlike the circumstances presented by those cases, however, in the situation here the central figure is not the judge or the jury, but the prosecutor.* The question is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case. We conclude that the answer must be in the affirmative.

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

"There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory' motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' 395 U.S., at 725. . . . We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. Cf. United States v. Jackson,* 390 U.S. 570. . . .

"Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*. [Fns. omitted.]" (Italics added.)

The same considerations apply in the case at bench. " . . . [N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." (*In re Gault* (1967) 387 U.S. 1, 13 [18 L.Ed.2d 527, 538, 87 S.Ct. 1428].) ██ As in *Blackledge,* here the "central figure is not the judge or the jury, but the prosecutor" who is "upping the ante" by filing a new petition and demanding a suitability hearing thereby ensuring that the minor risk far more serious consequences as a result of his successful review of the original jurisdictional order. Through the prosecutor, the State clearly has retaliated and thereby has exposed the minor to a "significantly increased potential period of incarceration." Such potential is manifest from the fact that the maximum period of incarceration to which a minor can be subjected, assuming C.Y.A. commitment, is different and more onerous in the case of a defendant tried as an adult than it is for persons committed by juvenile court. (Cf. Welf. & Inst. Code, §§ 1769, 1770, 1771.) Further, if the minor were tried as an adult, he could be sentenced to prison for the term prescribed by law, a substantially more onerous disposition than permissible in juvenile court proceedings.

Accordingly, a peremptory writ shall issue commanding respondent court to hold a new adjudication hearing in said proceeding No. J 811640 and to conduct such other procedures as may then be required by law.

Ford, P. J., and Allport, J., concurred.

A petition for a rehearing was denied April 22, 1977.