[Crim. No. 23268. June 24, 1985.]

In re JACKIE LEE BOWER on Habeas Corpus.

COUNSEL

James Farragher Campbell, Linda Lee DeMetrick and Campbell & DeMetrick for Petitioner.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Respondent.

OPINION

REYNOSO, J.—We issued an order to show cause in this case to examine the first degree murder conviction of Jackie Lee Bower. The prosecution may not, consistent with the guarantee of due process of law, penalize a defendant for exercising constitutional rights. We conclude that a due process violation occurred when the prosecution increased the severity of the charges against petitioner after jeopardy had attached and petitioner had exercised his right to a fair trial by successfully moving, based on prosecutorial error, for a mistrial. Because the due process violation in this case affects only the increase in the charge from second to first degree murder, we modify the judgment of guilt to second degree murder.

I. *The Crime, the Mistrial, and the Retrial*

On August 18, 1978, Robert McClure and petitioner drove in separate vehicles to the Richmond home of Carla and Richard New. The two visitors entered the home with Carla's consent. Stanley Boyle, a guest of the News was asleep on the couch. Later that night, while all five people were in the living room, McClure grabbed Carla New and pushed her head into the rug.

Petitioner pushed down the head of Stanley Boyle, who was still asleep. One shot was fired, by either McClure or petitioner, and it killed Richard New. Neither Carla New nor Stanley Boyle witnessed the shooting. Mc-Clure and petitioner drove away in their respective vehicles leaving their headlights off.

McClure and petitioner were charged with murder in violation of Penal Code[1] section 187 and McClure was charged with personal use of a firearm in violation of section 12022.5. Petitioner was also charged with being an accessory in violation of section 32. The information set forth three prior convictions against petitioner (involuntary manslaughter, possession of narcotics in prison, and possession of a firearm by a felon). At the motion of McClure's counsel the Superior Court for the County of Contra Costa severed the trials of the codefendants. Counsel stipulated that McClure would be tried first.

In McClure's trial, the jury was instructed on first degree murder. However, the jury found McClure guilty of second degree murder. It also found that McClure had personally used a gun in the commission of the crime.

The trial against petitioner began on April 1, 1980. Out of the presence of the jury, petitioner admitted the three prior convictions alleged in the information. On the first day of the proceedings, the jurors and alternate jurors were sworn to try the case. The prosecutor made his opening argument.

On the second day of the trial, the defense and prosecution attorneys entered into a stipulation that limited petitioner's liability to the crime of second degree murder. The court directed counsel to resolve the precise form of the stipulation during discussions on jury instructions. Five of the prosecution's witnesses testified that day.

On the third day of the trial, three additional witnesses for the prosecution testified. During the testimony of Sergeant Doug Sieberling, petitioner's parole status was revealed.[2] Petitioner moved for a mistrial and the motion was granted.

---

[1] All references are to the Penal Code unless otherwise indicated.

[2] At that point, the prosecution was asking the witness about a search of petitioner's Citrus Heights residence. The prosecutor (Mr. Nelson) was conducting his direct examination. The

Sieberling was the last of the prosecutor's eight witnesses. Apparently the trial was practically completed at the time of the motion for a mistrial. Only the closing arguments, jury instructions and deliberations remained at the time of mistrial.

On retrial, the prosecution unilaterally announced that the stipulation was not renewed. In an affidavit later filed in response to the petition for habeas corpus the prosecutor explained that he had withdrawn the initial offer because in the one week between the two trials, he had had "the opportunity to review the physical evidence and to engage in lengthy conversation with some of the potential witnesses. [¶] By the 14th [first day of retrial], I had formed the opinion, based on my more exhaustive review of the case, that it was [petitioner] and not his codefendant, as had been previously believed, who fired the fatal shot. [¶] As it was my belief that [petitioner] was the victim's actual killer, I felt that a first degree murder conviction was appropriate and that I was no longer obligated to agree to anything less. [¶] The case was tried and argued on the theory that it was [petitioner] who had fired the bullet which took the victim's life."

In his opening statement to the jury on retrial the prosecutor argued that petitioner Bower was guilty of murder. However, the prosecutor stated to the jury that "The evidence will prove to you beyond a reasonable doubt, and this is important, that the defendant aided and abetted in the murder of Richard New." Further, during a discussion of petitioner's bail status on the second day of trial, the court asked the prosecutor whether there would be anything different about the second trial. The prosecutor answered that the evidence would not be "different."

The second trial was expeditious. It began on April 14, 1980. The prosecution called the same eight witnesses it had called in the first proceeding. The defense called no witnesses. On the fourth day of the trial, the instructions were read to the jury and they were taken to the jury room for deliberations. On the fifth day of the trial the jurors returned their verdict. They found petitioner guilty of first degree murder.

---

following exchange took place:
"By Mr. Nelson: Q. Did you go back up to Citrus Heights?
"A. [Sergeant Sieberling] Yes.
"Q. When was that that you returned?
"A. That was on the 17th of October, 1978.
"Q. And with whom did you go?
"A. Detective Bill Gibson, a parole officer named—I don't have it—Greenwood, or I would have to refer to my report for exact name. And a representative from the homicide detail, Sacramento Sheriff's Office.
"Q. What was the purpose of your going up on that occasion?
"A. To effect an arrest of [petitioner] and to assist his parole officer in the search of the residence."

II. *Analysis*

 Before discussing petitioner's legal contentions, we address the question of whether the claims are cognizable on habeas corpus.

The People argue that all of petitioner's claims were cognizable on appeal but were not raised in that proceeding. We agree that habeas corpus generally may not be used as a second appeal and that matters that could have been, but were not, raised on appeal are not cognizable on habeas corpus in the absence of special circumstances warranting departure from that rule. (See *In re Coughlin* (1976) 16 Cal.3d 52, 55 [127 Cal.Rptr. 337, 545 P.2d 249]; *In re Terry* (1971) 4 Cal.3d 911, 927 [95 Cal.Rptr. 31, 484 P.2d 1375].) It is equally well established, however, that when reference to matters outside the record is necessary to establish that a defendant has been denied a fundamental constitutional right resort to habeas corpus is not only appropriate, but required. (See, e.g., *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *In re Lewallen* (1979) 23 Cal.3d 274, 278 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823].) Neither this court's opinion in *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360, 374-375 [194 Cal.Rptr. 152, 667 P.2d 1165], nor that of the United States Supreme Court in *United States* v. *Goodwin* (1982) 457 U.S. 368, 383-384 [73 L.Ed.2d 74, 86-87, 102 S.Ct. 2485], contemplates that when a claim of prosecutorial vindictiveness is made the parties will be denied the opportunity to present evidence outside the record on that issue. (See *Thigpen* v. *Roberts* (1984) 468 U.S. 27, fn. 6 [82 L.Ed.2d 23, 29-30, 104 S.Ct. 2916].) Therefore habeas corpus is an appropriate procedure.

 As in other cases in which a collateral attack on the judgment is mounted, the petitioner bears the burden of stating a prima facie case entitling him to relief if true (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257]) and of explaining any delay in making the claim. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].) Although a habeas corpus petitioner normally bears the burden of proving the facts upon which he bases his claim for relief, (*In re Riddle* (1962) 57 Cal.2d 848, 852 [22 Cal.Rptr. 472, 372 P.2d 304]) where, as here, the possibility that increased or additional charges violated due process is at issue, he need only demonstrate facts giving rise to a presumption of vindictiveness at which time, even on habeas corpus, the burden shifts to the People to rebut the presumption. (Cf. *In re Lewallen, supra,* 23 Cal.3d 274 [People failed to rebut clear meaning of court's statement at sentencing that increased punishment was penalty for exercising right to trial].)

 The People do not contend that the allegations of the petition for writ of habeas corpus, supported by the record of the trial

proceedings, fail to give rise to a presumption of prosecutorial vindictiveness.[3] ▮ And, as was the case in *In re Lewallen, supra,* the People have neither alleged facts to rebut the presumption in their Return to the petition before this court, nor offered evidence to do so. By making only general denials of the allegations of the petition, alleging only conclusionary statements of ultimate facts, the People have indicated a willingness to rely on the record of proceedings in the superior court and the documentary evidence submitted by petitioner as exhibits to his petition. (*In re Lewallen, supra,* 23 Cal.3d 274, 278.) In these circumstances an evidentiary hearing is unnecessary, and we depart from the normal procedure on habeas corpus in which the allegations of the return are accepted as true unless rebutted by the petitioner in his traverse and by proof at the ensuing evidentiary hearing. (See *In re Lawler, supra,* 23 Cal.3d 190, 194; *In re Saunders* (1970) 2 Cal.3d 1033, 1047-1048 [88 Cal.Rptr. 633, 472 P.2d 921].)

▮ Having determined that the petition is properly before this court, we turn to petitioner's claim.[4] The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it "would be patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States* v. *Jackson* (1968) 390 U.S. 570, 581 [20 L.Ed.2d 138, 147, 88 S.Ct. 1209].) For the reasons discussed below, we conclude that the due process prohibition against prosecutorial vindictiveness bars the People from increasing the severity of the potential charges against petitioner after he moved for a mistrial. The People have not met their heavy burden of demonstrating that the withdrawal of the stipulation resulted from the discovery of facts, not available at the time of the stipulation, which would legitimately have influenced the charging process. The prosecutor has not therefore rebutted the presumption that the increase in charges immediately following petitioner's exercise of his constitutional right to a fair trial was the result of vindictiveness.

▮ In *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072] the United States Supreme Court held that the due process clause protects a defendant from both actual vindictiveness and the apprehension of retaliation for exercising the right to appeal. (*Id.,* at p. 725 [23 L.Ed.2d at p. 669].) In *Pearce,* the court held that, on retrial after a successful appeal, a defendant could not be held to a greater sentence than that

---

[3]The record also confirms that there was no undue delay in making the claim. Petitioner first sought relief in the superior court within one year of the time his appointed counsel abandoned the appeal and the remittitur issued.

[4]In addition, petitioner claims that he is entitled to relief because of violations of the double jeopardy guarantee, denial of the right of confrontation and ineffective assistance of counsel. We conclude that each of these contentions is without merit.

initially imposed unless affirmative reasons based on objective information about defendant's conduct after the original sentencing appeared in the record to legitimize the increased sentence. (*Id.,* at p. 726 [23 L.Ed.2d at p. 670].)

And in *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098] the court held that due process required that "[a] person convicted of an offense is entitled to pursue his statutory right to a trial *de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." (*Id.,* at p. 28 [40 L.Ed.2d at pp. 634-635].) Although noting that due process is not offended by all possibilities of increased punishment,[5] a violation was found in *Perry* because the circumstances of the case presented a "realistic likelihood of 'vindictiveness.'" (*Id.,* at p. 27 [40 L.Ed.2d at p. 634].) The potential for vindictiveness arose from the fact that a prosecutor "clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo . . .* since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final . . . ." (*Ibid.*) The court recognized that the rationale "was not grounded upon the proposition that actual retaliatory motivation must inevitably exist . . . 'due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.'" (*Id.,* at p. 28 [40 L.Ed.2d at p. 634].) Thus, the court emphasized that no evidence of bad faith or maliciousness on the part of the prosecutor was produced or required. "Due process of law requires that such a *potential* for vindictiveness must not enter into North Carolina's two-tiered appellate process." (*Ibid.,* italics added.)

In later cases the *Pearce-Perry* presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy. In *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663] (rehg. den. 435 U.S. 918 [55 L.Ed.2d 511, 98 S.Ct. 1477]) the court reaffirmed the right of a prosecutor to threaten and to bring a heavier charge against an accused who does not plead guilty to a lesser

---

[5]The court distinguished two cases involving an increase in sentence following appeal, retrial and conviction on the same charges. In *Colten* v. *Kentucky* (1972) 407 U.S. 104 [32 L.Ed.2d 584, 92 S.Ct. 1953] the fact that the court which imposed the increased sentence after retrial was not the one whose original judgment had prompted an appellate reversal led to the conclusion that there was little possibility that an increased sentence could have been motivated by personal vindictiveness on the part of the sentencing judge. In *Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17 [36 L.Ed.2d 714, 93 S.Ct. 1977] the increased sentence was imposed by a second jury, which was unaware of the original sentence and had neither a stake in the prior conviction nor a motivation to discourage defendants from seeking appellate review.

charge. The court distinguished *Pearce* and *Perry*, noting that "[i]n those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense . . . .' [Citation.]" (*Id.*, at p. 362 [54 L.Ed.2d at p. 610].) ". . . [In] the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." (*Id.*, at p. 363 [54 L.Ed.2d at pp. 610-611].) In *Bordenkircher* the prosecutor's intention to seek conviction on the more serious charge if no bargain were struck was clearly expressed at the outset of plea negotiations. The defendant "was thus fully informed of the true terms of the offer when he made his decision to plead not guilty." (*Id.*, at p. 360 [54 L.Ed.2d at p. 609].)

*Pearce* and *Perry* were again found inapplicable in the context of pre-jeopardy plea negotiations in *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485]. In that case, defendant Goodwin initiated plea negotiations regarding several misdemeanor offenses. He chose not to plead guilty and demanded a trial by jury in federal district court. The United States Attorney then sought and obtained an indictment charging Goodwin with one felony and three related counts. The court declined to apply *Pearce* and its progeny because it found the presumption has been applied "only in cases in which a reasonable likelihood of vindictiveness exists." (*Id.*, at p. 373 [73 L.Ed.2d at p. 80].) The court noted that the presumption was inapplicable because of the timing of the prosecutor's action and the nature of the right asserted by defendant. (*Id.*, at pp. 381-382 [73 L.Ed.2d at p. 86].)

The timing of the prosecutor's action is important because "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. [Fn. omitted.] As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." (*Id.*, at p. 382 [73 L.Ed.2d at p. 86].)

The court noted that an important factor in assessing the timing element is the attachment of jeopardy. At the pretrial stage "the prosecutor's assessment of the proper extent of prosecution may not have fully crystallized. *In contrast, once a trial begins*—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determi-

nation, on the basis of that information, of the extent to which he should be prosecuted." (*Id.,* at p. 381 [73 L.Ed.2d at p. 85], italics added.)

California cases have recognized a due process protection of a similar scope. The due process clause of the California Constitution also prohibits increased charges motivated by prosecutorial vindictiveness. (*People* v. *Rivera* (1981) 127 Cal.App.3d 136, 141-144 [179 Cal.Rptr. 384], cert. den. (1982) 457 U.S. 1123 [73 L.Ed.2d 1338, 102 S.Ct. 2942].) The due process guarantee was held to preclude a prosecutor from seeking a hearing on a juvenile's fitness to stand trial as an adult after the minor successfully challenged the juvenile court hearings and orders in a habeas corpus proceeding. (*In re David B.* (1977) 68 Cal.App.3d 931 [137 Cal.Rptr. 577].) That court noted that "As in *Blackledge* [v. *Perry*], here the 'central figure is not the judge or the jury, but the prosecutor' who is 'upping the ante' by filing a new petition and demanding a suitability hearing thereby ensuring that the minor risk far more serious consequences as a result of his successful review of the original jurisdictional order. Through the prosecutor, the State has clearly retaliated and thereby has exposed the minor to a 'significantly increased potential period of incarceration.' " (*Id.,* at p. 936.) The court did not discuss whether there was any evidence of retaliation or apprehension of retaliation, but quoting with approval from *Perry,* noted that the "rationale . . . in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist." (*Id.,* at p. 935.)

The exception recognized in the federal case law for plea bargaining is also recognized in California (*People* v. *Rivera* (1981) 127 Cal.App.3d 136, 144 [179 Cal.Rptr. 384]) as is an exception for a pretrial amendment following defendant's motion to dismiss (*People* v. *Farrow* (1982) 133 Cal.App.3d 147, 153 [184 Cal.Rptr. 21]). The California cases place great emphasis on when during the proceedings the prosecutor's allegedly vindictive action occurs.

In *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165], defendant's first trial resulted in a mistrial. After Twiggs declined a proffered plea bargain and invoked his right to a retrial, the prosecution amended the information to include prior felony convictions as sentence enhancements. These convictions did not constitute new information; the prosecution knew of the convictions before the first trial and showed no interest in them until after the retrial. We concluded that these were "circumstances that plainly gave rise to a presumption of vindictiveness." (*Id.,* at p. 372.) The presumption was applicable because the "prophylactic rule enunciated in *Perry* [was needed to] protect against both the possibility that defendant will be deterred from exercising a legal right, as

well as the danger that the state might be retaliating against defendant for maintaining his innocence and facing a retrial." (*Id.*, at pp. 369-370.)

We distinguished the cases governing plea bargaining and noted that they "did not decide the issue of vindictiveness presented in a case such as this, where the record suggests that the more serious charges were not part of the 'give-and-take' of plea negotiations." (*Id.*, at p. 371.) Additionally, we decided that cases suggesting that the presumption of vindictiveness was inapplicable to pretrial settings were not dispositive of Twiggs' situation— a retrial after a mistrial. Rather, Twiggs' situation was "analogous to that in the post-conviction context; no new facts were developed through the preliminary hearing or trial, but defendant faces a risk of greater punishment apparently as a result of choosing to face a retrial rather than plead guilty." (*Id.*, at pp. 373-374.) As in the cases involving retrial after appeal in *Twiggs* jeopardy had attached. Since the presumption applied, we concluded that the prosecution bore a heavy burden of rebutting with an explanation that adequately dispelled the apprehension of vindictiveness. (*Id.*, at p. 374.)[6]

In the present case, petitioner was charged with a more severe crime after he moved for a mistrial, which was necessary to insure the fairness of the proceedings against him. Jeopardy had attached. The prosecutor offered no new facts but, as in *Twiggs*, relied upon facts available at the time of the first trial. At the time petitioner requested the mistrial, the prosecutor was examining his last witness in the case. Because of the time and effort invested in the first proceeding in this case, as in *Twiggs*, the prosecution had "a great interest in discouraging defendant's assertion of a retrial." (*Twiggs* v. *Superior Court, supra,* 34 Cal.3d at p. 369.)

These circumstances present a reasonable likelihood of vindictiveness. The prosecution has an obvious institutional interest in avoiding the duplication of effort and increased expenditure of resources attendant on the retrial of such a case. The presumption of vindictiveness protects against the danger that such institutional pressures might subconsciously motivate a vindictive prosecutorial response to a defendant's motion for mistrial made at this late stage of the proceedings. (*Thigpen* v. *Roberts, supra,* 468 U.S. at p. — [82 L.Ed.2d at pp. 29-30]; *U.S.* v. *Goodwin, supra,* 457 U.S. at pp. 376-377, 383 [73 L.Ed.2d at pp. 82-83, 86-87].) The presumption also aims to free the defendant of the apprehension that the exercise of a right designed to guarantee that his or her trial is fair will be met with a retalia-

---

[6]Because *Twiggs* elucidates prior law, but does not establish a new rule or standard, its principles are applicable to petitioner's case even though the judgment became final in 1981, two years before *Twiggs*. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 36 [196 Cal.Rptr. 704, 672 P.2d 110].)

tory increase in the charge and potential period of incarceration to which he or she is subjected. (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 28 [40 L.Ed.2d at pp. 634-635].). Regardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceeding.

The People argue that there was no vindictiveness in this case and that the retrial of petitioner for first degree murder was the result of a legitimate determination that petitioner was the perpetrator of the crime. In his affidavit submitted to the superior court, the deputy district attorney states that "[t]he case was tried and argued on the theory that it was [petitioner] who had fired the bullet which took the victim's life."

■■■ The People's argument reflects a fundamental misunderstanding of the nature of the presumption of vindictiveness. The cases have sometimes referred to the prosecutor's burden of rebutting the presumption with "an explanation that adequately eliminates actual vindictiveness" (*Twiggs* v. *Superior Court, supra,* 34 Cal.3d at p. 374), or to the burden of proving "that the increase in the severity of the charges did not result from any vindictive motive" (*United States* v. *Burt* (9th Cir. 1980) 619 F.2d 831, 836), or to the need to show that the more severe charge was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness" (*United States* v. *Griffin* (9th Cir. 1980) 617 F.2d 1342, 1347, cert. den. 449 U.S. 863 [66 L.Ed.2d 80, 101 S.Ct. 167]).

At the same time, however, the courts have consistently refused to attempt to ascertain the subjective intent of the prosecutor. Thus, in *Blackledge* the court emphasized that the rationale is "not grounded upon the proposition that actual retaliatory motivation must inevitably exist." (417 U.S. at p. 28 [40 L.Ed.2d at p. 634].) In *United States* v. *Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369 the court explained that its conclusion that a "significant possibility that such discretion may have been exercised with a vindictive motive or purpose" existed was not intended to impugn the actual motives of the prosecuting office. Emphasizing that *North Carolina* v. *Pearce* and *Blackledge* v. *Perry* sought to "reduce or eliminate apprehension on the part of an accused that he may be subjected to retaliatory or vindictive punishment . . . only for attempting to exercise his procedural rights" the court explained that "the mere *appearance* of vindictiveness is enough to place the burden on the prosecution." (534 F.2d at p. 1369; italics in original.)

In fact, when the cases discuss the possibility of rebutting a presumption of vindictiveness they refer only to a situation in which the prosecuting

authority can show that "it was impossible to proceed on the more serious charge at the outset. . . ." (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 29, fn. 7 [40 L.Ed.2d at p. 635]; *United States* v. *Goodwin, supra,* 457 U.S. at p. 376, fn. 8 [73 L.Ed.2d at p. 82]; see *Thigpen* v. *Roberts, supra,* 468 U.S. at p. —, fn. 6 [82 L.Ed.2d at p. 30].) The example given is *Diaz* v. *United States* (1912) 223 U.S. 442 [56 L.Ed. 500, 32 S.Ct. 250]. "In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death." (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 29, fn. 7 [40 L.Ed.2d at p. 635].)

 It is thus apparent that the presumption of unconstitutional vindictiveness is a legal presumption which arises when the prosecutor increases the criminal charge against a defendant under circumstances which, like those in petitioner's case, are deemed to present a "reasonable likelihood of vindictiveness." The presumption is not based on the subjective state of mind of the individual prosecutor and does not imply that he or she individually harbors an improper motive.

 By the same token this legal presumption cannot be rebutted by the prosecutor's declaration that he or she was motivated by a reassessment of the evidence against the defendant rather than by any desire to punish the exercise of a protected right. In order to rebut the presumption of vindictiveness, the prosecution must demonstrate that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge.

 The declaration filed by the prosecutor in this case is not sufficient to rebut the presumption of vindictiveness. It does not specify any new fact or circumstance which led to the prosecutor's reevaluation of the evidence. The declaration demonstrates only that the prosecutor changed his mind about the identity of the person who fired the fatal shot. The prosecutor's statement to the trial judge and his opening statement to the jury buttress the conclusion that the decision to increase the charge against petitioner was not based on the discovery of new factual information which could not have been discovered at the time of the original charge; no new evidence was presented at the second trial. We therefore conclude that

the prosecution has not carried its burden of rebutting the presumption of vindictiveness.[7]

## III. *Conclusion*

In summary, we hold that as in *Twiggs* the circumstances here raise a reasonable likelihood of vindictiveness.[8] The People have not borne their burden of rebutting the presumption thereby created. Accordingly, it was not constitutionally permissible for the state to respond to petitioner's exercise of his right to an error free trial by increasing the charges to murder in the first degree.

Petitioner had a right to be tried for no greater crime than second degree murder. Because the due process violation in this case only affects the increase from second to first degree murder, the judgment must be modified to reflect a conviction and sentence for murder in the second degree.

The power granted to the court by section 1484 to dispose of a habeas corpus petition "as the justice of the case may require" confers authority analogous to that which an appellate court exercises under section 1260 in modifying a judgment to reduce the degree of a crime. (See, e.g., *In re Adams* (1975) 14 Cal.3d 629, 637-638 [122 Cal.Rptr. 73, 536 P.2d 473].) The judgment is therefore modified to reflect a conviction of and imposition of sentence for murder of the second degree, and the superior court is ordered to forward an amended abstract of judgment to the Department of Corrections upon the finality of this decision. Petitioner is not entitled to release, however, as he is held under a valid judgment of conviction. Therefore, the order to show cause is discharged and the petition for writ of habeas corpus is denied.

---

[7]Our decision does not cast doubt on the prosecutor's explanation for filing the increased charges. (Cf., dis. opn. of Lucas, J., *infra*, at p. 882.) Instead we hold that the subjective motivation of the individual prosecutor is not relevant.

The prosecutor's reassessment of the evidence alone cannot rebut the presumption of vindictiveness. The prophylactic purposes of the *Blackledge-Perry* presumption require that it be rebutted by quantifiable new facts or changed circumstances. A recital of objective factors is necessary to free the defendant from the apprehension of retaliation.

Our holding is not unduly restrictive of prosecutorial discretion as the dissent suggests. It applies only in cases where a mistrial is declared after jeopardy has attached. By the time a proceeding reaches this stage, the prosecutor is likely to have discovered and assessed all of the information against the accused and to have made a determination of the extent to which he or she should be prosecuted. (See, *U.S.* v. *Goodwin, supra,* 457 U.S. at p. 381 [73 L.Ed.2d at pp. 85-86].) If information which could not have been discovered initially and which justifies an increased charge is discovered, the prosecutor may be able to increase the charge and rebut the presumption of vindictiveness.

[8]As we noted in *Twiggs,* "[a]lthough the principles of vindictive prosecution derive from United States Supreme Court precedent, we base our decision also on California Constitution, article I, sections 7 and 15, which provide an independent basis for protection against vindictive prosecution." (34 Cal.3d 360, 374, fn. 6.)

Bird, C. J., Mosk, J., Kaus, J., and Broussard, J., concurred.

**GRODIN, J.,** Concurring and Dissenting.—I agree that in order to rebut the presumption of vindictiveness in circumstances such as this the prosecution must demonstrate that there has been some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process, and that the prosecution here has failed to meet that burden. I therefore concur in the conclusion that defendant is entitled to modification of the judgment.

The majority go further, however, and state that in order to rebut the presumption the prosecution must also show "that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*Ante,* p. 879.) The reason for this requirement is not explained, and I am not convinced it is appropriate as a blanket rule. If, for example, a new witness had appeared at the prosecutor's door and offered eyewitness testimony that it was defendant who shot the victim, the fact that the prosecution may have been negligent in failing to discover that witness earlier would seem to have little bearing on the question of vindictiveness. Perhaps there are other legitimate justifications for such a rule, but I would prefer to await their consideration until a case comes before us in which that issue is presented.

**LUCAS, J.**—I respectfully dissent to the reduction of petitioner's sentence from first to second degree murder. In my view, the district attorney satisfactorily explained the reason why, following a mistrial, an earlier stipulation was abandoned and the charges against petitioner were increased: The district attorney, after closer scrutiny of the case and further interviews of prosecution witnesses, now believed that petitioner, and not his codefendant, probably was the actual killer.

The majority finds this explanation "not sufficient." (*Ante,* p. 879.) By what authority may we simply reject the *sworn* statement of a public officer without even holding an evidentiary hearing to determine the truth or falsity of his averment?

In the present case, petitioner's conviction became final more than three years ago. Following issuance of an order to show cause in the superior court, the deputy district attorney who prosecuted the case filed an affidavit "under penalty of perjury" which alleged that (1) the original stipulation was the product of a "sense of fairness" arising from the fact that petitioner's codefendant had been convicted of only second degree murder; (2) after reviewing the physical evidence and conversing with witnesses, the prosecutor came to believe that petitioner, not the codefendant, had fired the fatal

shot and, accordingly, (3) he felt that a first degree murder charge was now appropriate. The superior court judge evidently believed the prosecutor in this regard, for he denied *any* habeas corpus relief.

As previously indicated, the majority purports to find the prosecutor's sworn statement "not sufficient." The majority reasons that the declaration "does not specify any new fact or circumstance which led to the prosecutor's reevaluation of the evidence" (*ante,* p. 879), but merely asserts a change of mind regarding the identity of the killer. The majority cites no authority holding that proof of a bona fide reevaluation of evidence, following a mistrial, is itself insufficient to rebut the presumption of vindictiveness. Such a holding is extremely dangerous, confining the prosecutor to his initial impressions of the case despite a subsequent insight or inspiration formed during the course of a reexamination of the available evidence. The prosecutor's charging function necessarily must be fluid and flexible enough to permit such reevaluation. Surely, the trial court's order of mistrial marked an appropriate time to undertake a fresh look at the evidence. The majority fails to explain why the mistrial order itself fails to qualify as the requisite "new fact or circumstance" leading to the prosecutor's reevaluation of his case.

The majority, casting doubt upon the prosecutor's explanation for filing increased charges, relies upon his opening statement in the second trial to the effect that defendant "aided and abetted" the murder. This circumstance is a rather slender reed upon which to rest a charge of prosecutorial vindictiveness, especially in light of the prosecutor's sworn denial of that charge. A fleeting reference in the prosecutor's opening statement to an aiding and abetting theory could indicate nothing more than that the prosecutor reused his earlier opening statement for the second trial rather than prepare an updated version, or that the prosecutor believed he would have less trouble convincing the jury of the aiding and abetting charge. The case was *tried* consistently with the theory that petitioner was the actual killer. Moreover, the prosecutor's *closing* statement relied on both theories and summarized the evidence supporting each of them.

In any event, the appropriate procedure where doubts exist regarding such factual matters is to order an evidentiary hearing. (See *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360, 374-375 [194 Cal.Rptr. 152, 667 P.2d 1165]; *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) The majority's suggestion that the People's return to the order to show cause somehow failed to allege facts to rebut the presumption of vindictiveness is simply incorrect: The return is *replete* with denials of the vindictiveness charge and contains numerous factual assertions regarding the prosecutor's true, nonvindictive motivation. For exam-

ple, the return states that "The prosecutor could properly refuse to enter into the [renewed] agreement and his refusal does not amount to a display of vindictiveness . . . . The prosecutor based his refusal to reenter into the stipulation upon a review of the testimony offered at the first trial . . . ."

Beyond relying upon, and reiterating, the prosecutor's own sworn denial, what else were the People supposed to do to rebut the presumption or to gain an evidentiary hearing?

I would deny the writ.