OPINION
ZIPPS, District Judge:
Appellant DeArcey Jamul Stewart (“Stewart”) appeals from the district court’s denial of his 28 U.S.C. § 2254 habe-as petition as untimely. Stewart is serving a sentence in state prison of two life terms plus seven years following convictions for attempted murder. After pursuing post-conviction relief in state court, Stewart filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of California. After thorough review, the district court denied Stewart’s federal habeas petition as untimely. On appeal, Stewart contends that the district court erred in: (1) concluding that Stewart was not entitled to statutory tolling of his federal statute of limitations under § 2244(d); (2) concluding that Stewart had not established an actual innocence claim; (3) failing to conduct an evidentiary hearing prior to dismissing Stewart’s federal habeas petition; and (4) concluding that Stewart’s Petition failed to adequately allege a federal claim. We affirm the district court’s denial of Stewart’s federal habeas petition.
I. BACKGROUND
On September 23, 1995, brothers Mark and Michael Parish were shot by a passenger in a nearby vehicle while driving through an area of San Diego claimed by the Skyline Piru gang, of which Stewart was a member. The Parish brothers identified Stewart as the driver of the vehicle and Richard Lee as the shooter. Stewart and Lee were arrested and charged in the Superior Court of California, County of San Diego. Stewart and Lee were tried jointly and in the spring of 1996 both men were convicted on two counts of attempted murder.[1] On July 18, 1996, Stewart was sentenced to two life terms and seven years in state prison. The trial court imposed consecutive terms of life with the possibility of parole; Stewart also received a five-year sentencing enhancement based on a prior conviction.
Stewart and Lee both pursued several avenues of post-conviction relief, most of which are not relevant to this appeal. Stewart filed a motion for a new trial and a direct appeal. Both defendants jointly filed a petition for review in the California Supreme Court. On August 31, 2000, as a result of a state petition for writ of habeas corpus filed by Lee and not joined by Stewart, Lee’s convictions for attempted murder were vacated. Lee’s post-conviction relief was based on new evidence proffered by Darnell Jackson, an informant (now in witness protection) who claimed that Arnold Adkins, not Lee, was the shooter, and that Stewart was the driver of the vehicle from which the Parish brothers’ shooting occurred. The state did not oppose Lee’s petition, instead conceding that the newly discovered evidence was sufficiently credible to cast doubt on the integrity of Lee’s convictions.
Following the vacatur of Lee’s convictions, on May 14, 2002, Stewart initiated the post-conviction relief proceedings that form the basis of the pending appeal. On *998 that date, Stewart filed a petition for writ of habeas corpus in the Superior Court of California, County of San Diego (“State Trial Court Petition”),[2] asserting that newly-discovered evidence proved that Darnell Jackson, not Stewart, was the driver of the vehicle from which the shots were fired. In support of his petition, Stewart submitted declarations from Roy Vinson, Arnold Johnson and Tatiana Daniels. On December 17, 2002, after reviewing the petition, return and traverse, the Superior Court denied the petition without a hearing on the ground that the declarations were not credible. On February 6, 2003, Stewart filed a petition for writ of habeas corpus in the California Court of Appeal (“State Court of Appeal Petition”), claiming: (1) the newly-discovered evidence undermined the entire case of the prosecution; (2) the trial court erred in denying Stewart’s petition; (3) Stewart is actually innocent; and (4) because of the newly discovered evidence, insufficient evidence supports Stewart’s conviction. On May 23, 2003, the Court of Appeal denied the petition, concluding that the declarations were not conclusive, not credible, and did not make a sufficient showing of Stewart’s innocence. On August 31, 2003, Stewart filed a petition for writ of habeas corpus in the California Supreme Court (“State Supreme Court Petition”), raising the same claims presented in his State Court of Appeal Petition.[3] On August 11, 2004, the California Supreme Court summarily denied the petition.
On May 17, 2005, Stewart filed a petition for writ of habeas corpus in the United States District Court, Southern District of California, challenging the California state courts’ denial of his petitions for writ of habeas corpus (“ § 2254 Petition”). Stewart’s § 2254 Petition presents four claims substantially identical to those made in his state petitions: (1) newly-discovered evidence undermines the entire case of the prosecution; (2) the state court erred in denying Stewart’s petition for writ of habeas corpus; (3) Stewart is actually innocent; and (4) because of the newly-discovered evidence, insufficient evidence supports Stewart’s conviction.
On February 28, 2008, a magistrate judge issued a Report and Recommendation (“R & R”) recommending that Stewart’s § 2254 Petition be dismissed as untimely or, alternatively, be denied because Stewart had not established actual innocence and the remaining claims did not present federal questions. Stewart objected to the R & R; he also filed a Motion for Discovery seeking to compel the State to disclose exculpatory material and an Amended Motion for Leave to Amend the Petition in order to adequately plead the federal basis of his claims.
*999 On May 30, 2008,. the district court issued an order declining to adopt the R & R, granting Stewart leave to amend and requiring the State to file a response to Stewart’s Motion for Discovery. The district court concluded that the State might possess exculpatory material which could affect the court’s timeliness analysis, and that therefore it was appropriate to rule on the Motion for Discovery prior to ruling on the timeliness of the § 2254 Petition. In doing so, the district court noted that Stewart’s federal § 2254 Petition was untimely and not subject to statutory or equitable tolling, but that Stewart might avoid dismissal if he could pass through the “actual innocence gateway” of Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In granting Stewart’s Motion for Leave to Amend, the district court accepted as filed Stewart’s proposed Amended § 2254 Petition, which purported to clarify the federal basis of Stewart’s claims.
During the course of briefing on Stewart’s Motion for Discovery, the district court conducted an in camera review of all documents upon which the State had relied in electing not to oppose Lee’s state court habeas petition, as well as any other material in the State’s possession that cast doubt on the Parish brothers’ eye-witness identification of Stewart. The district court also expanded the record to include declarations from Stewart; Maurice League, a fellow prisoner and an associate of one of the victims; Richard Lee; and Stewart’s attorney. Based on its review of the record, on April 21, 2010, the district court dismissed Stewart’s Amended § 2254 Petition as untimely,[4] concluding that Stewart had not satisfied the Schlup gateway actual innocence standard. The district court also denied Stewart’s request for an evidentiary hearing on his Schlup claim. This appeal followed.
II. STANDARD OF REVIEW
We review de novo the district court’s denial of a § 2254 petition on timeliness grounds. Porter v. Ollison, 620 F.3d 952, 958 (9th Cir.2010). Findings of fact made by the district court are reviewed for clear error. Moran v. McDaniel, 80 F.3d 1261, 1268 (9th Cir.1996). The Court accords a presumption of correctness to factual findings made by the state court. Id. The decision by the district court to decline to order an evidentiary hearing is reviewed for abuse of discretion. Roy v. Lampert, 465 F.3d 964, 968 (9th Cir.2006).
III. ANALYSIS
A. Timeliness of the Petition
28 U.S.C. § 2244(d)(1) identifies four events that potentially trigger the running of AEDPA’s one-year statute of limitations.[5] The limitations period is statutori *1000 ly tolled, however, during the time that “a properly-filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.” 28 U.S.C. § 2244(d)(2). The district court applied 28 U.S.C. § 2244(d)(1)(A), (B) and (D) and calculated when the applicable limitations period would run under a variety of factual scenarios. Under most of those scenarios, Stewart’s § 2254 Petition was untimely and not entitled to statutory tolling. However, with respect to its calculation under 28 U.S.C. § 2244(d)(1)(D), the district court noted conflicting evidence concerning when Stewart could have discovered the factual predicate of his federal claims and triggered the statute of limitations under that provision. The court stated that, assuming without deciding that Stewart could not have discovered the factual predicate of his claims before May 6, 2002,[6] the statute was tolled on May 14, 2002 when Stewart filed his State Trial Court Petition. The district court reasoned that if the statute of limitations was statutorily tolled from May 14, 2002 until August 11, 2004, when Stewart’s State Supreme Court Petition was denied, then his § 2254 Petition was timely; the clock ran from May 6 to May 14, 2002 (7 days) and then from August 11, 2004 to May 15, 2005, when Stewart handed his § 2254 Petition to prison officials for mailing (an additional 277 days). But, the district court ultimately concluded that Stewart’s § 2254 Petition was untimely because he was not entitled to statutory tolling during the entire period between May 14, 2002 and August 11, 2004. Specifically, the district court concluded that during the 100-day gap between the May 23, 2003 denial of his State Court of Appeal Petition and the August 31, 2003 filing of his State Supreme Court Petition, no “properly filed” state habeas petition was “pending” in the state court under 28 U.S.C. § 2244(d)(2).
The time between the denial of a petition in a lower California court and the filing of a subsequent petition in the next higher state court does not toll the statute of limitations pursuant to 28 U.S.C. § 2244(d)(2) if the latter petition is not timely filed. Carey v. Saffold, 536 U.S. 214, 225, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). In the absence of a clear indication by the state supreme court that a petition is untimely, the federal court “must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness.” Evans v. Chavis, 546 U.S. 189, 198, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006). California has a special system governing appeals when prisoners seek relief on collateral review. Id. at 192, 126 S.Ct. 846. Under that system, the equivalent of a notice of appeal is timely if filed within a “reasonable time.” Id. (Stevens, J., concurring) (citing In re Harris, 5 Cal.4th 813, 828 n. 7, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993)). Thus, “the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a ‘reasonable time.’ ” Id. at 198, 126 S.Ct. 846. California’s use of the “reasonableness” standard has prompted the United States Supreme Court to note that it is “more difficult for federal courts to determine just when a review application (ie., a filing in a higher *1001 court) comes too late.” Saffold, 536 U.S. at 223, 122 S.Ct. 2134. 'The Supreme Court has suggested that “the California courts themselves might alleviate the problem by clarifying the scope of the words ‘reasonable time’ in this context or by indicating, when denying a petition, whether the filing was timely. And the Ninth Circuit might seek guidance on the matter by certifying a question to the California Supreme Court in an appropriate case.” Chavis, 546 U.S. at 199, 126 S.Ct. 846.[7] To date, however, “California courts have given scant guidance as to what the State considers a ‘reasonable’ length of time to file an application for review.” Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011). Until such guidance is provided, the Supreme Court has instructed federal courts to apply a thirty-to-sixty-day benchmark for California’s “reasonable time” requirement, and courts in this circuit have developed a large body of case law which follows that instruction. Id. (collecting cases).[8]
In the present case, the district court’s summation of California timeliness rules was accurate. Stewart’s State Supreme Court Petition, filed 100 days after the denial of his State Court of Appeal Petition, was summarily denied by the California Supreme Court. Accordingly, the district court examined whether the 100-day delay was “reasonable” under California law. The district court, citing to Chavis and Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-41 (C.D.Cal. 2006), summarized California law as generally accepting a 30-to-60-day delay as reasonable, but also permitting delay beyond that length of time if the petitioner could establish good cause for the delay. The district court concluded that Stewart’s 100-day delay was unreasonable and not excused by good cause. Accordingly, the district court concluded that Stewart’s state court petition was not “pending” after May 23, 2003 and therefore Stewart was not entitled to statutory tolling. In so holding, the district court properly followed the United States Supreme Court’s instruction to use a 30-to-60-day “benchmark” for timeliness under California law. The district court also correctly concluded that Stewart had failed to demonstrate good cause for the 100-day delay.
Stewart argues on appeal that California law permits a 100-day gap between state court post-conviction relief petitions. In support of this claim, Stewart cites to four California state court cases which permitted the filing of a habeas petition in a higher court more than 100 days after the lower court’s denial of the preceding habe-as petition. In each of those cases, a gap of nine months to a year-and-a-half between state court filings was permitted due to a finding of good cause for the delay. See In re Spears, 157 Cal.App.3d 1203, 204 Cal.Rptr. 333, 335-36 (1984) (eighteen-month delay between direct appeal and post-conviction relief proceedings not barred by doctrine of laches because petitioner lacked capacity to represent himself, legal assistance available to indigent prisoners is scarce, and petitioner attempted to obtain legal assistance to *1002 pursue his ease immediately upon affir-mance of his conviction); In re Moss, 175 Cal.App.3d 913, 221 Cal.Rptr. 645, 649 (1985) (nine month delay not barred by doctrine of laches where the delay was attributable to petitioner’s inability to secure appellate counsel); In re Bower, 38 Cal.3d 865, 215 Cal.Rptr. 267, 700 P.2d 1269, 1273 n. 3 (1985) (noting without explanation that a one-year delay is acceptable); In re Burdan, 169 Cal.App.4th 18, 86 Cal.Rptr.3d 549, 558 (2008) (finding no substantial delay where unrepresented petitioner filed a petition for writ of habeas corpus in the Court of Appeal 10 months after denial of a similar petition in the superior court). However, these cases carry little persuasive weight. Spears, Moss and Bower were decided before the California Supreme Court expressly relied on Harris’s “reasonable time” language in 1993.[9] Spears and Moss discuss the state’s “laches” argument without reference to any “reasonable time” standard. Bower’s timeliness analysis is cursory and contained within a footnote. Finally, Bur-dan’s habeas petition challenged parole proceedings and the Burdan court specifically explained that the timeliness rules apply with less force where the petitioner is challenging a parole board determination. See 86 Cal.Rptr.3d at 558 (stating that a collateral attack on a conviction must be timely in order to “vindicate society’s interest in the finality of its criminal judgments ... [and] the public’s interest in the orderly and reasonably prompt implementation of its laws ... [and that] requiring a prisoner to file his or her challenge promptly helps ensure that possibly vital evidence will not be lost ... [and protects the] psychological repose that may come for the victim [at the close of a criminal proceeding].”).
Regardless, even if a 100-day delay is occasionally permitted upon a showing of good cause under California law, Stewart has failed to demonstrate good cause for the delay in this case. Stewart attempted to explain his delay in filing his State Supreme Court Petition by alleging that “the investigation regarding newly discovered evidence was not complete until May 2002.” However, the May 2002 discovery of information could not have any bearing on the 100-day gap between the May 23, 2003 denial of Stewart’s State Court of Appeal Petition and the August 31, 2003 filing of his State Supreme Court Petition. Stewart argues on appeal that he made an additional showing of good cause which the district court failed to consider, namely that he was under prison emergency status and had no ability to research his petition. This argument is similarly implausible. We note that this “explanation” appeared in the “Supporting Facts” section of Ground 2 of his State Supreme Court Petition, not in the portion of the form petition which provides petitioners with the opportunity to explain a filing delay. Regardless, even if we consider Stewart’s “prison emergency status” argument, it does not amount to a showing of good cause justify *1003 ing Stewart’s delay. As the district court pointed out, “comparison of the appellate court habeas petition and the state supreme court habeas petition reveals that [Stewart] presented the same claims in both petitions” and that Stewart did not present any new evidence to the California Supreme Court. Thus, there is no indication that research was required in the preparation of Stewart’s State Supreme Court Petition. In addition, thirty days passed between the May 23, 2003 denial of Stewart’s State Court of Appeal Petition and the prison emergency allegedly declared on June 23, 2003, and there is nothing in the record to suggest that Stewart was immediately transferred on that date. Even if that emergency status were considered good cause for delay, Stewart still had at least 30 days to file his State Supreme Court petition (which was identical to his State Court of Appeal petition) and he failed to do so.
Accordingly, Stewart’s § 2254 Petition was not statutorily tolled during, the 100-day gap between the denial of Stewart’s State Court of Appeals Petition and the filing of his State Supreme Court Petition. Stewart’s § 2254 Petition was not timely filed.
B. Actual Innocence Claim.
"Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... [or] expiration of the statute of limitations.” McQuiggin v. Perkins, -U.S. -, 133 S.Ct. 1924, f928, 185 L.Ed.2d 1019 (May 28, 2013). When an otherwise time-barred habeas petitioner “presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional. error,” the Court may consider the petition on the merits. See Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court has recently cautioned, however, that “tenable actual-innocence gateway pleas are rare.” McQuiggin, 133 S.Ct. at 1928. “[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.” Id. (citing Schlup, 513 U.S. at 329, 115 S.Ct. 851); see also House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (emphasizing that the Schlup standard is demanding and seldom met). This exacting standard sets an extremely high hurdle for Stewart. The Schlup standard permits review only in 'the “extraordinary” case. Schlup, 513 U.S. at 324-27, 115 S.Ct. 851 (emphasizing that “in the vast majority of cases, claims of actual innocence are rarely successful”). Under Schlup, we must “assess how reasonable jurors would react to the overall, newly supplemented record,” including all the evidence the petitioner now proffers. Lee v. Lampert, 653 F.3d 929, 945 (9th Cir.2011). In conducting a Schlup gateway review, our “function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.” House, 547 U.S. at 538, 126 S.Ct. 2064. Stewart contends that the district court misapplied Schlup because it made discrete factual findings that relied on the prior jury’s determination of facts, as opposed to assessing how a reasonable juror would react to the totality of the evidence. Specifically, Stewart claims that the district court impermissibly discounted the declarations of Maurice League and Tatiana Daniels and failed to consider the cumulative effect of those declarations on the trial evidence. According to Stewart, League and Daniels’s declarations undermined the testimony of both *1004 Parish brothers with respect to identification of Stewart and the vehicle used in the shooting. Stewart also contends that Daniels’s declaration supported Stewart’s claim that Jackson was the driver of the vehicle. These arguments are without merit.
We review the district court’s decision for abuse of discretion.[10] In Schlup, the Supreme Court assumed that to be the correct standard of review. See Schlup, 513 U.S. at 333-34, 115 S.Ct. 851 (O’Con-nor, J., concurring) (noting that the Court had “decided that the district court committed legal error, and thus abused its discretion,” and that “the Court does not disturb the traditional discretion of district courts in this area,” while acknowledging that the Court did not directly address the issue). We subsequently relied on Justice O’Connor’s concurrence as setting the correct standard of review. See Roe v. Anderson, 134 F.3d 1400, 1402 n. 1 (9th Cir.1998) (abuse of discretion review “has been subsequently adopted in numerous other contexts” including in Schlup, citing Justice O’Connor’s concurrence). We have directly applied this standard when reviewing a district court’s disposition of Schlup claims. See Paradis v. Arave, 130 F.3d 385, 396-99 (9th Cir.1997) (holding that “[a]s the district court applied an erroneous standard for the showing of actual innocence here, it abused its discretion”). The Supreme Court’s subsequent decisions on actual innocence claims have been consistent with this standard of review. See, e.g., House, 547 U.S. at 539-40, 126 S.Ct. 2064 (noting that deference is given to a trial court’s assessment of evidence presented to it in the first instance); McQuiggin, 133 S.Ct. at 1936 (noting that the district court’s assessment of the actual innocence claim should be “dispositive, absent cause”). Absent any clear guidance from either our en banc court or the Supreme Court that review of the Schlup inquiry is, in fact, de novo, we are bound to maintain the status quo and apply an abuse of discretion standard.[11]
Twenty pages of the district court’s decision are devoted to an exhaustive review and analysis of the trial evidence as well as the additional evidence proffered by Stewart. With respect to the Parish brothers’ identification of Stewart, the district court described Mark Parish’s testimony as follows: Mark testified that Stewart was driving the vehicle; shortly after the shooting, Mark described the driver as bald but at trial clarified that the shooter had his hair in a ponytail and just appeared bald; Mark received a phone call after the shooting from a caller who identified the driver; and Mark identified Stewart in a photo lineup. The district court also summarized Michael Parish’s testimony, stating that Michael identified Stewart as the driver and that Michael identified Stewart in a photo lineup. With respect to the vehicle involved in the shooting, the *1005 district court noted that Mark Parish described a rust-colored BMW. Mark further testified that he had previously described the BMW as silver-gray because of its unusual paint job, which caused its colors to change in differing lights. Michael’s testimony also described the vehicle as rust-colored. Both brothers selected the actual paint color of the BMW from paint samples shown to them at trial. The Parish brothers’ testimony was corroborated in part by their brother-in-law, Sylvester Wade, a police detective. The district court noted that shortly after the shooting both brothers had described the vehicle to Wade as a “light silver-grayish or light-blue BMW.” Wade prepared the photo lineups from which both brothers identified Stewart.
The district court considered the testimony of the Parish brothers and other witnesses in conjunction with the additional evidence proffered by Stewart and analyzed evidence that supported Stewart’s defense. The district court accurately summarized the declarations of League and Daniels. The district court noted that League stated in his declaration that Mark Parish told League that he was unsure who had shot him, and that the photo identification of Lee and Stewart was the result of pressure. Daniels stated that she was Jackson’s girlfriend at the time of the shooting and that Jackson confessed to her that he was the driver of a reddish-brown Honda from which another individual, Arnold Adkins (now dead) shot the Parish brothers. The district court acknowledged that some evidence suggested that the Parish brothers’ identification of Stewart and Lee may have been influenced by “word on the street.” The district court also gave consideration to Stewart’s alibi and the possible evidentiary confusion related to another gang-related shooting that occurred hours after the Parish brothers were shot. Additional declarations provided by Stewart were considered by the district court; those declarations contradicted evidence introduced at trial that Stewart had bragged about the shooting and suggested that Jackson could have been the driver.
Ultimately, the district court concluded that Stewart had failed to pass through the Schlup gateway for a number of related reasons. The district court found that Jackson’s confession, which had cast doubt on Lee’s convictions could weaken the Parish brothers’ identification of Stewart only by implication; in fact, Jackson’s confession implicated Stewart while exculpating Lee. The district court also noted that Stewart had a weak alibi: several witnesses, including his mother, placed him and his BMW near the scene of the shooting, and his alibi witnesses were impeached. Moreover, the evidence suggesting possible confusion between the shooting of the Parish brothers and another gang-related shooting on the same night only called the Parish brothers’ identification of Lee into question. Additional evidence related to the BMW implicated Stewart as well: the BMW that witnesses saw at the scene of the shooting was identical to the BMW that Stewart drove and possessed the same distinctive wheel rims; Stewart’s BMW had gun powder residue on it, and Stewart was found cleaning the car in the middle of the night several hours after the shooting. Although the Parish brothers gave conflicting statements regarding the color of the BMW involved in the shooting, they correctly identified the color at trial using paint swatches and even the trial judge noted that the color was difficult to describe. Stewart had ample opportunity to, and did in fact challenge or attempted to cast doubt on all of this BMW-related evidence at trial; the jury simply found his efforts unpersuasive. Finally, additional *1006 eyewitness testimony also linked Stewart’s BMW to the scene. The evidence allegedly undermining Stewart’s “confession” (ie., his boast to a witness about having “shot his homeboy”) was of little significance given that the “confession” was only an inference by a prosecution witness.[12] Other declarations offered by Stewart were similarly equivocal, as they did not specifically exculpate Stewart.
The district court’s assessment of the evidence was appropriately cumulative. See House, 547 U.S. at 538, 126 S.Ct. 2064; see also Lee, 653 F.3d at 945. The district court fairly assessed the trial evidence, noting various deficiencies and conflicts therein. The district court also thoroughly discussed the additional evidence proffered by Stewart and its potential exculpatory effect. The district court considered the League and Daniels declarations in light of the other evidence before the court. League’s declaration was duplica-tive of testimony offered at trial by Kenneth Anderson, who stated that Michael Parish told him he did not know if Stewart and Lee had shot him, and that he was getting pressure from his parents and the police. Daniels’s statement that Jackson had confessed to driving a reddish-brown Honda from which Arnold Adkins shot the Parish brothers was contradicted by the eyewitness testimony describing a light-colored BMW at the scene, as well as the testimony of the Parish brothers. Ultimately, the district court concluded that “considering all the evidence, which includes the evidence presented at and excluded from trial, as well as the District Attorney’s investigation file and the post-conviction declarations obtained from Stewart, Stewart has failed to show that this is one of the ‘extraordinary’ cases where ‘a court cannot have confidence in the outcome of the trial.’ ” Although the district court specifically rejected the probative value of the League and Daniels declarations, that does not prove that the district court failed to “assess how reasonable jurors would react to the overall, newly supplemented record.” House, 547 U.S. at 538, 126 S.Ct. 2064. The district court addressed discrete elements of evidence because there is no way to address all the evidentiary matters except one at a time. The district court recognized the applicable law and synthesized the trial evidence with the additional proffered evidence. Its cumulative analysis complied with the Schlup standard.[13]
*1007 C. Request for Evidentiary Hearing.
Stewart requested an evidentiary hearing on his Amended § 2254 Petition, contending that Schlup requires a hearing where credibility of witnesses is at issue. The district court declined the request. Stewart challenges that decision on appeal, contending that the district court improperly made credibility determinations without an evidentiary hearing.
Schlup requires a petitioner “to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.” 513 U.S. at 324, 115 S.Ct. 851. The habeas court then “consider[s] all the evidence, old and new, incriminating and exculpatory,” admissible at trial or not. Lee, 653 F.3d at 938 (citing House, 547 U.S. at 538, 126 S.Ct. 2064). On this complete record, the court makes a “probabilistic determination about what reasonable, properly instructed jurors would do.” Id. (citations omitted). Under the Schlup gateway standard, newly presented evidence may call into question the credibility of the witnesses presented at trial. See Schlup, 513 U.S. at 330, 115 S.Ct. 851. In such a case, “the habeas court may have to make some credibility assessments.” Id. No controlling legal standard exists regarding whether the credibility assessment contemplated in Schlup requires an evi-dentiary hearing and if so, under what circumstances.[14] Generally, in this Circuit, “a habeas petitioner should receive an evi-dentiary hearing when he makes ‘a good-faith allegation that would, if true, entitle him to equitable tolling.’ ” Roy, 465 F.3d at 969 (citing Laws v. Lamarque, 351 F.3d 919, 919 (9th Cir.2003)).
We review the district court’s decision not to conduct an evidentiary hearing for abuse of discretion.[15] Roy, 465 F.3d at 968. Given the strength of the evidence before the district court and the court’s method of evaluating that evidence, we conclude that the district court did not abuse its discretion in denying Stewart’s request for an evidentiary hearing. The district court correctly noted that newly-presented evidence giving rise to a Schlup gateway innocence claim may require a credibility assessment. The district court *1008 therefore assumed that Stewart’s newly-presented evidence was credible and thoroughly evaluated his actual innocence claim in light of the newly-presented evidence. The court ultimately concluded, however, that the new evidence did not adequately support Stewart’s actual innocence claim. The district court noted that Stewart’s newly-presented evidence could, at best, challenge the credibility of the Parish brothers’ testimony, but that even if the Parish brothers’ testimony were discredited, sufficient direct and circumstantial evidence independent of their testimony placed Stewart and his car at the scene of the shooting. The district court explained: “even assuming the declarations now provided by Stewart (including the Lee declaration) are credible, and assuming the Parish brothers’ identification of Stewart is not credible, the evidence presented by Stewart has not caused the Court to ‘lose confidence in the outcome of the trial.’ Schlup, 513 U.S. at 316, 115 S.Ct. 851. Accordingly, an evidentiary hearing is not necessary to resolve Stewart’s Schlup claim.” Thus, the district court concluded that even if it fully credited Stewart’s new evidence (which would be the best result Stewart could achieve at an evidentiary hearing), Stewart would not be entitled to the relief requested. The district court was entitled to deny Stewart’s request for an evidentiary hearing under these circumstances. See Lee, 653 F.3d at 945 (“assuming arguendo” that new evidence was reliable and rejecting Schlup gateway claim).
Stewart takes issue with the district court’s conclusion that the newly-discovered evidence, even if fully credited, would not cause a reviewing court to lose confidence in the outcome of the trial. Specifically, Stewart claims that if deemed credible, the declarations he submitted after trial would establish that: (1) Darnell Jackson confessed to being the driver in the Parish brother shooting; (2) Jackson drove a rust-colored Honda similar to the vehicle described by the Parish brothers; and (3) Mark Parish was not sure who shot him and his identification was the result of pressure. According to Stewart, these three findings would raise reasonable doubt in the mind of a juror. This argument is without merit for the reasons stated above. The first two “new facts” listed by Stewart are supported solely by the declaration of Tatiana Daniels. Daniels states that Jackson admitted that he was driving a reddish-brown Honda from which Adkins shot the Parish brothers.[16] This alleged statement by Jackson is at odds with Jackson’s earlier statement — which prompted Lee’s conviction to be vacated— that Stewart drove the vehicle from which Adkins shot the Parish brothers. It is also contradicted by eye-witness testimony describing a light-colored BMW drive away from the scene as well as subsequent in-court identification by the Parish brothers of the BMW paint color they described alternately as “rust” and “light grey.” Maurice League’s declaration that Mark Parish told him he was not sure who shot him and that the identification was the result of pressure was duplicative of evidence presented at trial through the testimony of Kenneth Anderson. The district court had ample support for its conclusion that Stewart’s newly-discovered evidence did not tip the Schlup determination in his favor.
IV. CONCLUSION
Based on the foregoing, we conclude that Stewart is not entitled to statutory *1009 tolling and that he did not make a showing of actual innocence sufficient to pass through the Schlup gateway. The district court properly reached its decision without an evidentiary hearing. Because the Amended § 2254 Petition is time-barred, we need not consider the district court’s conclusion that the Petition failed to state a federal claim. The judgment of the district court is therefore AFFIRMED.[17]
Dissent by Judge BERZON.

. Lee was also convicted on one count of assault on a peace officer stemming from the circumstances of his arrest.

. California's collateral review system differs from that of other States in that it does not require, technically speaking, appellate review of a lower court determination. Instead it contemplates that a prisoner will file a new ''originar' habeas petition. See Carey v. Saffold, 536 U.S. 214, 221, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). Accordingly, we refer to the petitions filed by Stewart in the California trial, appellate and supreme courts as separate petitions, although they collectively represent Stewart’s post-conviction litigation (and exhaustion) in the state courts of the pending federal claims.

. Stewart's State Supreme Court Petition was dated August 31, 2003 and received by the California Supreme Court on September 4, 2003. The district court correctly identified August 31, 2003 as the date that Stewart’s State Supreme Court Petition was filed pursuant to the “mailbox rule,” which calculates a pro se prisoner litigant’s filing date from the date the document is delivered to a prison official for mailing. See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

. The trial court also denied Stewart's Motion for Discovery and directed the Clerk of the Court to file under seal the material submitted in camera by the State.

. 28 U.S.C. § 2244(d)(1) provides:
A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of — (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate *1000 of the claim or claims presented could have been discovered through the exercise of due diligence.

. May 6, 2002 is the date that Stewart obtained the declaration of Tatiana Daniels; the district court concluded that Ms. Daniels’s declaration was the first piece of potentially admissible, exculpatory evidence Stewart obtained.

. The Ninth Circuit did certify this question to the California Supreme Court in 2008, but the California Supreme Court denied certification. See Chaffer v. Prosper, 592 F.3d 1046, 1048 n. 1 (9th Cir.2010).

. The dissent suggests that we read Chavis to hold that a delay in excess of 60 days is per se unreasonable under California law. Dis. Op. at 1009-10. We have relied primarily on this Court’s decision in Velasquez and its summary of the large body of federal case law applying a 30-60 day “benchmark” for California's reasonable time requirement. We acknowledge that this benchmark may be exceeded under appropriate circumstances.

. Harris relied on In re Clark, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 738, n. 5 (1993), which in addition to In re Robbins, 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 317-18 (1998), is a case that California courts currently use to signal that a case is untimely. See Walker v. Martin,-U.S.-, 131 S.Ct. 1120, 1124, 179 L.Ed.2d 62 (2011). Although Stewart contends that Clark and Robbins apply only to capital habeas petitions, no California case appears to make that distinction. To the contrary, several California Court of Appeal cases have applied Clark and Robbins to noncapital habeas petitions. See, e.g., In re Nunez, 173 Cal.App.4th 709, 93 Cal.Rptr.3d 242, 252 (2009); In re Lucero, 200 Cal.App.4th 38, 132 Cal.Rptr.3d 499, 504 (2011). In addition, the United States Supreme Court has held that the Clarlc/Robbins reasonableness standard applies to California's non-capital habeas cases as well. See Walker, 131 S.Ct. at 1125.

. We disagree with the dissent's argument that a de novo review of the evidence before the district court is appropriate. In addition, we note that Stewart himself invoked the abuse of discretion standard of review, arguing that the district court erred in its review of the facts under Schlup.

. Applying a de novo standard of review would effectively require this Court to review the entire record — and any additional evidence presented by the petitioner — in any case in which the petitioner articulates a Schlup gateway claim in his petition. Not only would this potentially place a heavy burden on our circuit, but more importantly, adopting such a rule would not conform with our standard practice of reviewing district courts' factual determinations in habeas cases for clear error. The cases cited by the dissent in support of that position (particularly the en banc decisions in Lee, Smith and Sistrunk) neither discuss the applicable standard nor apply a standard approximating de novo review.

. At trial, prosecution witness Kevin Brown testified that he saw Stewart at his football practice, where Stewart told him "I shot your homeboy.” Brown assumed Stewart was referring to one of the Parish brothers. In his federal post-conviction relief proceedings, Stewart offered a statement from William Allen, a friend and fellow gang member, who stated that he had never seen Stewart at Brown's football practice. The district court correctly concluded that inferential value of Brown’s testimony and the impeachment value of Allen’s statement were minor.

. Stewart argues that the district court’s analysis was inconsistent with House, but a brief comparison with the facts of House demonstrates the thinness of Stewart's evidentiary showing in this case. In House, the defendant's new forensic evidence seriously undermined forensic evidence presented at trial that was crucial to the prosecution’s case. Other new evidence created a strong, credible counter-narrative about whom the real perpetrator might have been. See 547 U.S. at 552-53, 126 S.Ct. 2064. By contrast, none of the evidence Stewart offers would have had such a substantial effect in undermining the prosecution’s case. Moreover, the House Court noted that, “considered in isolation,” a reasonable jury might well disregard the [new] forensic evidence, or the evidence implicating a different suspect.” See id. at 548, 552-53, 126 S.Ct. 2064. "In combination, however, with the challenges to the [forensic] evidence, and the lack of motive with respect to [the defendant], the evidence pointing to [a different suspect] would likely reinforce other doubts as to [the defendant’s] guilt.” Id. at 552-53, 126 S.Ct. 2064. Stewart's evidence, *1007 even "in combination” does not achieve this effect.

. The parties do not cite any case law articulating a legal standard regarding when an evidentiary hearing on a gateway Schlup claim is required. There does not appear to be any controlling law on this issue. The Schlup Court suggested that when considering an actual-innocence claim in the context of a request for an evidentiary hearing, the district court need not “test the new evidence by a standard appropriate for deciding a motion for summary judgment," but rather may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.” 513 U.S. at 331-32, 115 S.Ct. 851. The Fourth Circuit has left open the possibility that a Schlup credibility determination could be made based on a cold record as opposed to an evidentiary hearing. See Teleguz v. Pearson, 689 F.3d 322, 331 (4th Cir.2012). Stewart incorrectly cites Johnson v. Finn, 665 F.3d 1063 (9th Cir.2011) in support of his claim that due process requires an evidentiary hearing anytime credibility is at issue. Johnson is not on point, as it holds that a district judge may not reject the credibility finding of a magistrate judge in the context of a suppression motion or a Batson claim without holding a new evidentiary hearing. Id. at 1066. Neither of those scenarios is applicable to Stewart's case.

. We disagree with the dissent's opinion that the district court abuses its discretion when its failure to hold an evidentiary hearing prevents the appellate court from engaging in an appropriate de novo review of the record, Dis. Op. at 1014-15, because we disagree Stew *1008 art's Schlup claim should be reviewed de novo.

. In his declaration, Roy Vinson stated that Jackson possessed a .357 caliber revolver which Jackson said had been used in "a shooting." This declaration does not directly link Jackson to the shooting of the Parish brothers.

. IT IS FURTHER ORDERED THAT Stewart’s Motion to Supplement and request for judicial notice filed on December 23, 2010 (Dkt. No. 13) is DENIED AS MOOT.