OPINION OF THE COURT
Bruce M. Kaplan, J.
Gregory M. was placed on probation on two dockets follow *943 ing findings of sexual abuse in the first degree and sexual abuse in the third degree, respectively. A violation petition was subsequently filed, and a hearing was held before this court pursuant to Family Court Act § 360.3.
At the conclusion of the hearing the court rendered decision, finding by a preponderance of the competent evidence that the respondent had violated the terms and conditions of his probation.
In their summations, counsel vigorously disputed the question of the applicable standard of proof. Since the language of Family Court Act § 360.3 does not provide guidance, the court deemed that it would be of interest to Bench and Bar to issue this supplemental memorandum.
In seeking to determine the legislative intent with respect to standard of proof recourse to the Practice Commentary to Family Court Act § 360.3 proved singularly unhelpful. Professor Merril Sobie, a consultant in the drafting of article 3 observed that there appears to be a conflict within the Family Courts as to whether violations must be proven beyond a reasonable doubt, or can be based upon only a preponderance of the evidence, the test prescribed for adult criminal violations. He opined that in the absence of a statutory standard, the issue should be determined by the appellate courts. (Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, part 1, Family Ct Act § 360.3.) This decision squarely addresses this issue in order to provide an appropriate vehicle for appellate review and guidance.
In 1982 the Legislature redrafted the juvenile delinquency article which now appears as Family Court Act article 3. It removed juvenile delinquency from article 7 which is now limited to PINS (persons in need of supervision) matters.
Postdispositional procedures are subsumed in part 6 of article 3 and deal,, inter alia, with petition of violation, hearing on violation, as well as appeals. Its drafting represents a significant improvement both in form and substance over Family Court Act § 779.[1]
*944 Indeed, Family Court Act § 779 provides that if the court is satisfied by competent proof that the respondent without just cause failed to comply with the terms and conditions of probation it may revoke the order of probation, and proceed to make any order that would have been made at the time the order of probation was entered. The section is lamentably silent with respect to such niceties as notice and an opportunity to be heard, standard of admissibility of evidence, and other delineations of the respondent’s rights including his right to be represented by counsel.
Family Court Act § 360.3 is far more detailed. It mandates the standard of admissibility of evidence, entitlement to counsel, and entitlement to be notified of that right. It vouches safe to the respondent the right of cross-examination, and presenting evidence on his own behalf.
It has been noted that section 360.3 is similar in import to CPL 410.70, and that it should be read in conjunction with Family Court Act § 303.1 (2).[2]
CPL 410.70 (3) is more detailed than Family Court Act § 360.3. Indeed, it specifies that the burden of proof shall be preponderance of the evidence.
Both practical and conceptual considerations dictate that the standard of proof in Family Court parole revocation hearings also should be a preponderance of the evidence.
Family Court Act § 360.3 details the procedure for a hearing on violation and differs from dispositional hearings in only two respects: it provides that only relevant, competent and material evidence may be received, and is silent about the standard of proof. Family Court Act § 350.3 provides for the admissibility of evidence that is material and relevant and requires proof by a preponderance of the evidence. There appears to be no particular reason for the imposition of a more stringent standard of admissibility.
It is true that the Legislature did not specify the standard of proof in part 6. Therefore, it may be argued that it intended a different standard of proof than preponderance of the evidence. However, such a conclusion would be illogical. While *945 part 6 is concerned with postdispositional procedures, it also encompasses appeals as well as the manner in which a person shall be supervised. Most importantly section 360.3 (6) is a hybrid procedure for it mandates that the court determine whether there has been a violation of probation, and if it revokes probation, requires it to order a different disposition in that same hearing.
It would be anomalous to impose a different burden of proof for making an order of disposition where there had already been a prior disposition which had been revoked than the one applicable at the original dispositional hearing. Indeed, if there were to be a discrepancy between standards of proof it seems to me that a higher standard of proof should be required at the initial hearing rather than a subsequent one.
It may be that the failure to specify a standard of proof was an oversight in drafting. The Legislature is respectfully requested to amend Family Court Act § 360.3 by engrafting the preponderance standard found in CPL 410.70 (3).
It was earlier noted that Family Court Act § 360.3 was sufficiently similar to CPL 410.70 (3) to permit consideration of decisions interpreting that provision.
Those decisions make clear that the preponderance of evidence standard is a wholly appropriate one. In the first place CPL 410.70 (3) codified existing law when it specified the preponderance of evidence standard. (See, 6 Zett, NY Crim Prac ¶ 47.5 [1].)
When this standard has been challenged on due process grounds New York courts have found it to be constitutional. (People v Howland, 108 AD2d 1019 [3d Dept 1985]; People v Morse, 96 AD2d 654 [3d Dept 1983].)
In People v Morse (supra), the court relied on two United States Supreme Court cases which delineated the nature of a parole and a probation violation hearing.
In Morrissey v Brewer (408 US 471) and Gagnon v Scarpelli (411 US 778) the Supreme Court considered the requirements for procedural due process in hearings of this nature.
While recognizing the need for certain minimum standards the court explicitly stated that these hearings, conceptually indistinguishable from each other, were not stages of a criminal proceeding.
The Gagnon court went on to note that a probationer convicted of a crime has a more limited due process right than an accused in a criminal trial.
*946 In a footnote it observed that a juvenile charged with a crime is differently situated from an already convicted probationer, and entitled to a higher degree of protection. It contrasted In re Winship (397 US 358) where the standard of proof in juvenile delinquency proceedings must be proof beyond a reasonable doubt.
The citation to In re Winship (supra) is of particular value to the analysis of the instant question. It stands squarely for the proposition that proof beyond a reasonable doubt is an essential of due process and fair treatment at the adjudicatory stage of a juvenile delinquency proceeding.
The reference also underscores the Supreme Court’s recognition that a probation revocation hearing is not a part of the adjudicative process in juvenile delinquency proceedings, but rather is dispositional in nature.
The concurring opinion of Justice Harlan in In re Winship (supra) is instructive on why New York promulgated the preponderance standard in CPL 410.70 (3).
It was quoted in Addington v Texas (441 US 418) and in turn quoted in Santosky v Kramer (445 US 745, 754-755). "In Addington v. Texas, 441 U. S. 418 (1979), the Court, by a unanimous vote of the participating Justices, declared: 'The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.” ’ Id., at 423, quoting In re Winship, 397 U. S. 358, 370 (1970) (Harlan, J., concurring).”
Justice Harlan prefaced those remarks by stating: "the choice of the standard * * * does * * * reflect a very fundamental assessment of the comparative social costs of erroneous factual determinations.” (In re Winship, 397 US 358, 370, supra.)
He went on to note:
"The standard of proof influences the relative frequency of these two types of erroneous outcomes. If, for example, the standard of proof for a criminal trial were a preponderance of the evidence rather than proof beyond a reasonable doubt, there would be a smaller risk of factual errors that result in freeing guilty persons, but a far greater risk of factual errors that result in convicting the innocent. Because the standard of proof affects the comparative frequency of these two types of *947 erroneous outcomes, the choice of the standard to be applied in a particular kind of litigation should, in a rational world, reflect an assessment of the comparative social disutility of each.
"In a criminal case * * * we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.” (In re Winship, supra, pp 371-372.)
It is clear that society places a lesser concern on the social disutility of finding that a convicted criminal violated probation than it does on the social disutility of convicting an innocent person. Hence, there is no requirement to impose the more stringent standard of proof in probation revocation hearings.
The use of a standard less rigorous than proof beyond a reasonable doubt in probation revocation hearings has met with judicial approval in many other jurisdictions.[3]
Moreover, there is no compelling reason to mandate a higher standard of proof in a juvenile probation revocation hearing than in an adult one, for the two hearings are analogous. (Matter of Belcher, 143 Mich App 68, 371 NW2d 474 [1985].)
We now proceed to consider whether petitioner has sustained its obligation to prove by a preponderance of the credible evidence that Gregory M. violated the terms and conditions of his probation as specified in the violation petition dated October 30, 1985.
April 12, 1985 was a memorable day for Gregory M. He consented to dispositions of probation in open court in the presence of his counsel before two different Judges, on two separate findings from acts occurring on May 1, 1984 and on May 13, 1984, respectively. He was placed on probation on both of these dockets.
The specific condition of probation was contained in both indorsements, and I daresay the minutes of those hearings will reveal that it was made known to Gregory in open court.
*948 In addition the court finds uncontroverted that he was given a copy of the terms and conditions of probation with respect to D-2131 of 1984 which he signed.
While his signature does not appear on the terms and conditions of D-2130/84 I find he was given a copy of this document by the same probation officer. In addition, there is no difference in the printed or the written additional conditions in these documents.
I reject respondent’s argument that the CLO and the duty probation officer never met with respondent to discuss with him the terms and conditions of probation. This contention is belied by Probation Officer Bourne’s testimony as to the usual practices, and the highly significant fact that respondent started reporting to Mr. Bourne. He did not do so by happenstance. Obviously the CLO instructed him to report to the duty probation officer who in turn directed him to Mr. Bourne. In turn Mr. Bourne discussed the importance of attending the sexual behavior clinic, and behaving properly at school.
With respect to the substance of the violations claimed and proved, the court found pedestrian but sufficient under the preponderance test, the fact that the respondent missed at least five sexual behavior clinic appointments.
Since the disposition was fashioned to meet the needs and best interests of the respondent, as well as the protection of the community, respondent’s attendance at the sex clinic, given the findings of sexual abuse, was of singular importance.
It was distressing to have such a paltry presentation of evidence respecting respondent’s failure to attend the clinic. It is a shame that Probation Officer Bourne was not specifically queried as to what specific conversations he had with Gregory M., and what admonitions he delivered in light of the evidence that Gregory was not going to the clinic. It is clear that at first respondent lied about his missed appointments, and when confronted, made up unacceptable excuses for his absences.
The testimony of Norman N., an articulate and dedicated special education and crisis intervention teacher, established violations of the probation condition requiring him to obey all lawful school rules and regulations. It did so under any standard of proof.
This is not a situation where a violation was filed with unseemly haste; not in the least. Indeed, attempts were made to work with Gregory. Mr. N. testified to numerous violations of the school rule and regulations, after Gregory was told that *949 strict adherence to them was demanded of him. This expectation was made known to Gregory early in his tenure as a student at the school by Mr. N. in his role as a crisis intervention teacher.
Notwithstanding an encouraging start I find that respondent was disruptive in the classroom, that he spoke in an inappropriate manner, that he disrupted the functioning of . the class by instigating altercations, by throwing things in the classroom, by leaving the classroom without permission, by wrestling with another student, and striking another in the side of his neck.
He failed to curb his behavior after repeated admonitions to do so.
Respondent’s inability to comply with school regulations continued unabated. As a result of his uncontrolled behavior on October 21, 1985 he was suspended by the Board of Education under the procedure applicable to special education students.
In that regard, he violated the conditions of probation which required him to obey all lawful school rules and regulations.
On the basis of the foregoing, the court finds that respondent violated the terms and conditions of probation by a preponderance of the competent evidence.

. Family Court Act § 779 ("Failure to comply with terms of probation”) states: "If a respondent is brought before the court for failure to comply with reasonable terms and conditions of an order of probation issued under this article and if, after hearing, the court is satisfied by competent proof that the respondent without just cause failed to comply with such terms and conditions, the court may revoke the order of probation and proceed to *944 make any order that might have been made at the time the order of probation was entered.”

. Family Court Act § 303.1 (2) authorizes the Family Court to consider case law interpretations of relevant CPL sections in order to construe similar provisions of the Family Court Act. (12c Bennick-Mangan-Shapiro-Silverman, NY Civ Prac § 71.04.)

. Adams v Ross, 551 P2d 948 (Alaska 1976); In re Coughlin, 16 Cal 3d 52, 545 P2d 249 (1976); Matter of Belcher, 143 Mich App 68, 371 NW2d 474 (1985); Ewing v Wyrick, 535 SW2d 442 (Mo 1976); State v Case, 189 Neb 493, 203 NW2d 492 (1973); State v Brusenhan, 78 NM 764, 438 P2d 174 (1968); State v Hewett, 270 NC 348, 154 SE2d 476 (1967); Thompson v State, 198 Tenn 267, 279 SW2d 261 (1955); Slayton v Commonwealth, 185 Va 357, 38 SE2d 479 (1946).