Filed 3/3/16  P. v. Domka CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEONARD TODD DOMKA,<br><br>    Defendant and Appellant. | 2d Crim. No. B265041<br>(Super. Ct. No. 2012002525)<br>(Ventura County) |

Leonard Todd Domka was subject to postrelease community supervision (PRCS) when he was arrested for possessing ammunition, in violation of PRCS.  Twenty-nine days after his arrest, while he was still in custody, the trial court heard appellant's motion to dismiss a petition for revocation of PRCS or release him, and the petition itself.  It denied the dismissal motion, found appellant violated PRCS, sentenced him to serve 60 days in county jail, with 60 days of credit, and ordered his release.  Appellant contends the court erred because the PRCS revocation process violates his rights to due process and equal protection.  We conclude that any error was harmless beyond a reasonable doubt and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, appellant was convicted of two counts of sodomy of a person under 18 years of age (Pen. Code,[1] § 286, subd. (b)(1)) and one count of possession of child pornography (§ 311.1, subd. (a)). On April 2, 2014, he was sentenced to 16 months in prison.

Appellant was released and placed on PRCS on December 1, 2014. The conditions of his release included a prohibition against owning, using, or having access to any firearm or any ammunition that could be used in a firearm.

On March 25, 2015, the Ventura County Probation Agency (probation) searched "the family home where [appellant] resides and located an old holster and some shotgun shells." Appellant was arrested for violating the conditions of PRCS and placed in custody.

On April 3, 2015, probation filed a petition for revocation of appellant's PRCS, and set April 23 for a superior court revocation hearing. The petition alleged that probation established probable cause for the alleged violation on March 27, 2015.[2]

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The petition in the record lacks the required written report containing the circumstances of the alleged underlying violation. (§3455, subdivision (a); Cal. Rules of Court, rule 4.541(c).) Appellant's request to dismiss the petition does, however, describe those circumstances. It further states that the holster and ammunition had belonged to appellant's deceased brother, and were located in a locked bedroom. During the revocation hearing, the court stated it had a memorandum submitted by the probation department in which the recommendation is 60 days.

On April 23, appellant filed a request to dismiss the revocation petition. In that request and during proceedings on that date, he argued the revocation process violated his due process, and cited *Williams v. Superior Court* (2014) 230 Cal.App.4th 636 (*Williams*). The trial court ruled that *Williams*, a parole revocation case, had no application to PRCS. It found that probation had conducted a probable cause hearing on March 27, 2015, concluded appellant's due process had not been violated, and denied his dismissal request. The court inquired whether appellant wished "to proceed today." Appellant submitted the matter on the allegations in the petition. The court found him in violation of PRCS, ordered him to serve 60 days in jail, granted him 60 days' credit, and ordered that he be released from custody.

*PRCS Act*

The PRCS Act was created by the Legislature in 2011 as an alternative to parole for non-serious, nonviolent felons. (§ 3450.) It is similar, but not identical to parole. A felon who qualifies for PRCS may be subject to supervision for up to three years after his or her release from prison. (§ 3451, subd. (a).) This supervision is conducted by a county agency, such as the Ventura County Probation Agency, rather than by the State Department of Corrections and Rehabilitation. (*Ibid*; *People v. Isaac* (2014) 224 Cal.App.4th 143, 145.) The supervised person may be subject to various sanctions for violating the conditions of his or her PRCS, including incarceration in the county jail, but may not be returned to state prison for PRCS violations. (§ 3458; see also *People v. Espinoza* (2014) 226 Cal.App.4th 635, 639.)

Some PRCS conditions are mandated by statute. (§ 3453.) The county supervising agency also has authority to "determine additional appropriate conditions of supervision . . ., order the provision of appropriate rehabilitation and treatment services, determine appropriate incentives, and determine and order appropriate responses to alleged violations, which can include, but shall not be limited to, immediate, structured, and intermediate

3

sanctions up to and including . . . flash incarceration in a city or county jail." (§ 3454, subd. (b).)

A parolee alleged to have violated the terms of his or her release is arrested and brought before the court. (§ 1203.2, subd. (a)(5); § 3000.08, subd. (c).) By contrast, a person subject to PRCS is arrested and brought before the supervising county agency if their supervising officer, or any peace officer, has probable cause to believe the person has violated the conditions of his or her PRCS. (§ 3455, subd. (b)(1).)[3] The supervising county agency has authority to return the person to PRCS with modified conditions, including a period of incarceration in county jail, if it determines a violation has occurred. (*Id.*, subd. (a)(1).)

If the supervising agency determines that intermediate sanctions are not appropriate, the agency shall petition the court pursuant to section 1203.2 to revoke, modify, or terminate PRCS. (§ 3455, subd. (a).) The petition must include a written report from the supervising agency that explains the relevant terms and conditions of PRCS, the circumstances of the alleged underlying violation, the history and background of the violator, and any recommendations. (*Ibid.*; Cal. Rules of Court, rule 4.541(c).)

The supervised person is entitled to notice of a petition for revocation of his or her PRCS. (§ 1203.2, subd. (b)(1).) Thereafter, the person may waive a formal hearing and agree to modifications of his or her PRCS conditions. Otherwise, the court holds a formal hearing at which the supervised person is entitled to representation by retained or appointed counsel. (*Id.*, subd. (b)(2).) This hearing shall be held within a reasonable time after the filing of the revocation petition. (§ 3455, subd. (c).) The supervising agency may order the

---

[3] Section 3455 is unconstitutional to the extent that it amends the treatment of nonviolent drug possession offenders and permits their incarceration under circumstances prohibited by Proposition 36 and section 3063.1. (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 435-436.)

4

supervised person to remain in custody, if the agency determines, by a preponderance of the evidence, that the person poses a public safety or flight risk, or for any reason in the interests of justice. (*Ibid.*)

At the revocation hearing, the trial court is required to review and consider the probation officer's report. After considering that report, the court determines whether the alleged violations occurred and if so, whether to revoke or terminate the person's PRCS. (§ 1203.2, subd. (b)(1).)

DISCUSSION

Appellant contends the process used to revoke his PRCS violated his right to due process because he was not promptly arraigned or given a probable cause hearing before a neutral decision maker, as required by *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*). Because the process afforded persons subject to PRCS differs from that afforded to parolees, appellant further argues the PRCS revocation process violates his right to equal protection.

*Due Process*

*Morrissey* held that the requirements of due process apply to parole revocation proceedings. (*Morrissey*, *supra*, 408 U.S. at p. 481.) The minimum requirements of due process to which each parolee is entitled include "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Id.* at p. 489.)

In *People v. Vickers* (1972) 8 Cal.3d 451, our Supreme Court held that probation revocation proceedings need not be identical to parole revocation procedures, so long as equivalent safeguards are in place to assure that a

5

probationer is not arbitrarily deprived of his or her liberty for a significant period of time. (*Id.* at p. 458.) "Once taken into custody . . . due process requires that [the probationer] be accorded both preliminary and formal hearings which conform to *Morrissey* standards." (*Id.* at p. 460.) The probationer is also entitled to representation "by retained or appointed counsel at all revocation proceedings other than at summary proceedings had while the probationer remains at liberty after absconding." (*Id.* at p. 461.)

In parole revocation proceedings, "due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." (*Morrissey*, *supra*, 408 U.S. at p. 485.) This determination need not be made by a judicial officer but may, for example, be made by a parole officer other than the one who initiated the revocation process. (*Id.* at p. 486.) By contrast, "a unitary hearing will usually suffice in probation revocation cases to serve the purposes of the separate preliminary and formal revocation hearings outlined in *Morrissey.*" (*People v. Coleman* (1975) 13 Cal.3d 867, 894-895.)

Appellant contends he was deprived of due process because he was not arraigned before a court within 10 days of his arrest, and did not receive a *Morrissey*-compliant probable cause hearing within 15 days of his arrest. *Morrissey* requires only an informal hearing to determine whether reasonable grounds exist for the revocation of PRCS, conducted by "someone not directly involved in the case." (*Morrissey*, *supra*, 408 U.S. at p. 485; see also *People v. Coleman*, *supra*, 13 Cal.3d at pp. 894-895 ["a unitary hearing will usually suffice in probation revocation cases"].)

*Williams*, the case on which appellant relies, is distinguishable because it involved the revocation of parole, not PRCS. It held that a parolee who remains in custody pending a formal revocation hearing has a due process right to an in-court arraignment within 10 days of arrest, a probable cause hearing within 15 days after the arrest, and a revocation hearing within 45 days

6

after arrest. (*Williams*, *supra*, 230 Cal.App.4th at p. 665.) It did not consider whether due process requires the same time limits be observed in a PRCS revocation proceeding.

As we have noted, parole and PRCS, while similar in some respects, remain two separate forms of supervision. (*People v. Espinoza*, *supra*, 226 Cal.App.4th at p. 639.) One significant difference between the two systems appears in the beginning stage of each process. After a person subject to PRCS is arrested for an alleged violation of his or her PRCS terms, that person is first brought before the supervising agency, which determines whether probable cause supports the alleged PRCS violations. (§ 3455, subd. (b)(1).) A parolee arrested for violating the terms of his or her parole is initially brought before the court. (§ 3000.08, subd. (c).)

The *Williams* court was concerned that a parolee not be held in custody indefinitely before that initial court hearing. It imposed the 10-day arraignment requirement to insure that parolees would be held in custody for no longer than the statutory flash incarceration period (§ 3000.08, subd. (e)), without appearing in court. (*Williams*, *supra*, 230 Cal.App.4th at p. 663.) This same concern does not apply in PRCS revocation proceedings because the first step in that process is a *Morrissey*-compliant informal hearing before the supervising agency.

In this case, it is unclear whether appellant received a *Morrissey*-compliant informal hearing before the revocation hearing in court. The revocation petition alleges that probation established probable cause for the alleged violation on March 27, 2015. It does not, however, include a summary of probation's informal hearing, or the statutorily mandated report from probation which explains "the relevant terms and conditions of [PRCS], the circumstances of the alleged underlying violation, the history and background of the violator, and any recommendations." (§ 3455, subd. (a); Cal. Rules of Court, rule 4.541(c).) Thus, we cannot determine whether probation conducted a *Morrissey*-

7

compliant hearing.  For example, the record does not establish that the probation officer who conducted the informal probable cause hearing was a different officer than the officer who arrested him for violating the terms of his PRCS. (*Morrissey*, *supra*, 408 U.S. at p. 486.)

Assuming that appellant was deprived of a *Morrissey*-compliant probable cause hearing, in order to have the revocation order set aside, he must show the denial of such a hearing resulted in prejudice to him at the revocation hearing.  (*In re La Croix* (1974) 12 Cal.3d 146, 154 ["a parolee whose parole has been revoked after a properly conducted revocation hearing is not entitled to have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him at the revocation hearing"]; *In re Coughlin* (1976) 16 Cal.3d 52, 61, [no relief for probationer who did not show prejudice from failure to hold immediate prerevocation hearing].)  Appellant argues that he suffered severe prejudice, because there would have been a very good chance of a different outcome if he had been provided an opportunity to rebut the thin allegation before a neutral party before he served 30 days in county jail.  We disagree.  Appellant does not explain how he would have rebutted the petition at an earlier proceeding, or how the lack of an earlier hearing before a neutral party impaired his ability to rebut the petition at the revocation hearing. He submitted the matter on the allegations of the petition without presenting any evidence or defense.  Any violation of due process occasioned by the failure to hold a timely arraignment or preliminary probable cause hearing in this case was harmless beyond a reasonable doubt.  (*People v. DeLeon*, *supra*, at p. 1072.)

*Equal Protection*

Appellant argues that his equal protection rights were violated because the procedure used to revoke his PRCS differs from that applied to revoke parole under *Williams*, which affords parolees a right to a probable cause hearing within 15 days of arrest.  Because appellant has not established that any

8

denial of a timely *Morrissey*-compliant probable cause hearing resulted in prejudice to him, we need not consider the merits of his equal protection claim.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Donald D. Coleman, Judge

Superior Court County of Ventura

_____


Stephen P. Lipson, Public Defender, Michael C. McMahon, Chief Deputy Public Defender, William Quest, Senior Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.