Filed 8/29/25  P. v. Hernandez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TOMAS MICHAEL HERNANDEZ,<br><br>    Defendant and Appellant. | B337345<br><br>Los Angeles County<br>Super. Ct. No. XSCTA159260 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Richard B. Lennon and Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

Tomas Michael Hernandez appeals from the trial court's execution of a suspended prison sentence after the court found him in violation of his probation.  We find no abuse of discretion and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

### 1.    *Hernandez enters the victim's home late at night*

On January 4, 2023, at about 11:05 p.m., Jackie V. was sitting at her dining room table when she saw a man later identified as Hernandez looking through the glass in her unlocked door.  Hernandez opened the door and came into the victim's home.  She pushed him out and locked the door.  The victim told her husband what had happened.  He went outside and found Hernandez sitting on a chair in front of the garage.

Sheriff's deputies arrived.  After being advised of his rights, Hernandez told the deputies he'd gone into the home to " 'come up.' "  According to the probation report, that phrase "commonly" refers to "stealing."

The victim told a probation officer she'd been frightened and she injured her hand when she pushed Hernandez out the door.

### 2.    *The charges and grant of mental health diversion*

The People charged Hernandez with first degree residential burglary, person present.  The People alleged Hernandez had a prior strike, also for first degree residential burglary.  The People alleged five aggravating factors under rule 4.421 of the California

---

[1]    A preliminary hearing apparently was conducted in this case on January 25, 2023.  No reporter's transcript or minute order of the hearing is included in the record on appeal.  We therefore take the facts from the probation report, as does Hernandez in his opening brief.

Rules of Court, including that Hernandez engaged in violent conduct that indicated a serious danger to society, that he had served a prior term in prison or jail, and that, at the time of the offense, he was on probation or parole.

On July 10, 2023, Hernandez's counsel filed a motion for pretrial mental health diversion under Penal Code sections 1001.35 and 1001.36.[2] Hernandez attached a psychological evaluation by Dr. Ann L. Walker. Dr. Walker diagnosed Hernandez with bipolar disorder as well as severe opioid, stimulant (amphetamine), alcohol, and cannabis use disorders.

Dr. Walker stated Hernandez had told her he'd used heroin, methamphetamine, and cannabis, and drunk alcohol, on the day of the offense. Hernandez "reported that he was out of his mind" when he committed the crime. He "thought that he was at his aunt's house." In Dr. Walker's opinion, Hernandez was "appropriate for a dual diagnosis treatment program."

Hernandez also attached to his motion for diversion a letter from Next Level Up Recovery that he had been accepted into its residential drug and alcohol program.

The parties appeared before the court (Judge Tammy Chung Ryu) on July 24, 2023. The prosecution did not oppose Hernandez's motion or object to mental health diversion. The court found Hernandez both eligible and suitable for mental health diversion and therefore granted his motion. The court ordered Hernandez conditionally released to the program.

The court ordered Hernandez to follow all of the program's rules, to take his prescribed medication, and not to leave the program without prior approval. The court noted Hernandez

---

[2] References to statutes are to the Penal Code.

also would receive "mental health service[s] and treatment through Kedren." The court ordered Hernandez to stay away from the victim, to make restitution to the victim, and not to possess any burglary tools. Hernandez confirmed he understood all the conditions of the diversion and promised to comply with them. The court set the date of September 26, 2023 for confirmation that Hernandez had been transported to the program.

Just over two weeks later, on August 9, 2023, counsel appeared before the court (Judge Hector E. Gutierrez). Hernandez also was present in custody. The prosecutor had given defense counsel two "arrest reports."[3] The prosecutor told the court, "[Hernandez] has already walked away from [the live-in drug treatment program] and been arrested two times." The prosecutor said Hernandez's parole officer had called her and reported Hernandez had been arrested on August 2 and again on August 5. She continued, "[H]e's also on other people's property during both of these arrests. One is an observation arrest by law enforcement and one is where a civilian has to call the police because he's on their property."

Defense counsel told the court "[t]he primary reason" Hernandez left the program "was to see his family, his grandmother, his mother, his siblings." Counsel continued, "He had not seen them in person for two years . . . . He made an emotional decision and left the program to see them. They did not let him stay with them, and it was at that point that he relapsed."

---

[3] The arrest reports are not included in the record on appeal.

4

The court stated it had read the arrest reports. The court noted, "[T]he first details an incident on Wednesday, August 2nd . . . at approximately 4:30 in the morning where a sheriff's deputy on patrol observed the defendant in the front yard of a residence, ducking behind some bushes. . . . The defendant admitted he was on parole for burglary and that he did not live in the area." Hernandez had methamphetamine on his "person." Of "more concern" to the court was a second incident three days later:

> "[A]t approximately 11:30 in the evening . . . the sheriff's department responded to a call of a prowler. A citizen informed the sheriff's department that a male adult was standing on his porch with a bottle of beer. . . . [S]heriff's department personnel responded to the location, contacted defendant Hernandez, and he appeared to be under the influence. Narcotic paraphernalia was recovered from his person, and the citizen informed sheriff's deputies that he saw the defendant walking onto the driveway and looking through the windows of his parked cars. The defendant then sat on his front porch. When the citizen opened the door to the porch, the defendant said that he was looking for his friends."

Based on these arrests, the court terminated mental health diversion, reinstated criminal proceedings, and scheduled a pretrial conference.

### 3. *Hernandez pleads to the charge and agrees to complete a residential program*

On October 3, 2023, both sides announced ready and the case was assigned to Judge Teresa P. Magno for trial. The prosecution offered to strike Hernandez's strike and to ask the court to sentence him to the midterm of four years in the state prison. The court then gave Hernandez an indicated sentence of the upper term of six years, execution suspended, with probation and a six-month residential program. The prosecutor objected. Hernandez told the court he wanted the suspended prison time and the program.

Hernandez then waived his rights and pleaded no contest to the charge. He admitted the person-present allegation, his strike prior, and three of the aggravating circumstances.[4]

Defense counsel located a residential program for Hernandez at the Tarzana Treatment Center. On November 21, 2023, the court sentenced Hernandez to the upper term of six years, suspended execution of that sentence, placed Hernandez on formal probation for two years, and ordered him "to serve two to three months in a residential dual-diagnosis program through Tarzana." The court also ordered Hernandez to complete any outpatient program that Tarzana designated and to report to probation. The court ordered Hernandez conditionally released to Tarzana to be transported to the program. Hernandez confirmed he understood and accepted all of the terms and conditions of his probation.

---

[4] The prosecutor struck the other two aggravating circumstances.

The court cautioned Hernandez:

> "So I'm giving you the program 'cause you've requested a program and, hopefully, you were sincere in wanting to go through a program instead of just saying the stuff to get you out of custody.  It's up to you. . . . [¶] But in terms of the program, you're ordered to remain in the program, abide by all their rules and regulations, to not leave the program unless you have my permission or the program's permission.  If, however, in your mind you believe you have a valid excuse for leaving, you're ordered to show up to my court the first business day—okay?—and tell me what's going on.  If you do that, I promise to keep an open mind and listen.  Okay? [¶] But if you leave the program . . . and I do not hear from you, you're leaving me with one impression, and that is you would rather just spend six years in state prison."

Hernandez said he understood and agreed.

### 4. *Hernandez's court-ordered treatment program discharges him within days*

Hernandez was admitted to the Tarzana Treatment Center on December 1, 2023.  Four days later, on December 5, 2023, the program expelled him for violating its rules.  A psychologist's note states, "Over the past week I have received numerous reports from staff about patient non[-]compliant behavior."  Hernandez had been "caught writing love letters" to another patient after he had been told not to communicate with her and

7

he'd signed an acknowledgement of that instruction. Hernandez then was "caught in a group" that patient attended; it was not Hernandez's assigned group. Even though staff "redirected" him, he "attempted to attend another group she was in later that day." The next day staff saw Hernandez "carrying on a long conversation with the same female."

Hernandez also tried to "manipulate" staff members into giving him more pain relievers. When the program discharged Hernandez, it instructed him to report to his probation officer "for placement or remand to custody."

5. ***The probation violation hearing and execution of sentence***

On December 11, 2023, Hernandez's counsel told the court he'd been "kicked out of the Tarzana program." The court issued a no-bail bench warrant. Hernandez apparently was arrested on the warrant.[5] Hernandez appeared in court in custody on December 19. A supplemental probation report dated January 2, 2024 stated Hernandez never reported to probation. His parole agent stated that "[u]nder the supervision of parole, [his] conduct ha[d] been poor and he absconded from parole after leaving [Tarzana Treatment Center]."

On March 27, 2024, the court conducted a formal probation hearing. Stan Galperson, a director at the Tarzana Treatment Center, testified he discharged Hernandez because "he was

---

[5] The supplemental probation report reflects a December 8 detention or arrest for "disorderly conduct: intoxicated drug/ alcohol" in violation of section 647, subdivision (f), as well as a December 18 warrant for a parole violation.

manipulating staff to get extra medication on a couple of occasions."  Galperson explained,

> "He went to the nurse's station to ask for pain relievers.  He had already taken it that day. He was told he'd have to come back after eight hours.  He wasn't satisfied with that. [¶] He went to the other nurse's station and did the same thing.  There, he was told 'no.' [¶] Then he went to a third staff member . . . a technician, and asked them again. [¶] We call that 'splitting staff' and it's manipulation. We have a low tolerance for that."

Another "really concerning piece," Galperson said, was Hernandez's communications with "a female patient."  Tarzana Treatment "prohibit[s] relationships in the program."  Hernandez continued to violate that prohibition "even after he signed [a] document" agreeing to follow the rule.  Hernandez was warned again.  His misconduct continued.  He was warned a second time.

On the day the program discharged Hernandez, he "was found in the cafeteria, sitting at the same table and carrying on a conversation with the female."  He was brought to Galperson's office.  Galperson "confronted" him.  Hernandez "made like he didn't know what [Galperson] was talking about."

After the prosecutor laid the necessary foundation, the court admitted into evidence as a business record[6] a 17-page packet of documents from Tarzana Treatment Center.

Defense counsel told the court he did not plan to call any witnesses "with respect to the violation," but he did want to call

---

[6]     See Evid. Code, § 1271.

9

a family member "for a mitigation statement for sentencing." Zulema Maldonado, Hernandez's aunt, then testified. Maldonado said both of Hernandez's parents were addicted to drugs and alcohol, and his mother was "using" during her pregnancy. Maldonado testified that, when Tarzana Treatment discharged Hernandez, she tried to help him get back into that program or another program but the program didn't respond.

The court found Hernandez in violation of the terms of his probation. Defense counsel asked the court to give Hernandez "another chance." The prosecutor argued Tarzana Treatment had given Hernandez "multiple chances" and he "did not comply." The court told Hernandez it was "saddened" to execute his sentence, but the court had given him a chance—over the People's objection—and Hernandez "couldn't even follow the simple rule of staying away from another attendee in the program." The court then executed the six-year sentence and awarded Hernandez his credits.

## DISCUSSION

1. ***Governing law and standard of review***

The prosecution must prove the facts supporting a probation revocation by a preponderance of the evidence. (*People v. Gray* (2023) 15 Cal.5th 152, 163; *People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) After finding a defendant has violated probation, a trial court has discretion either to reinstate probation on the same or modified terms or to terminate probation and commit the defendant to prison "if the interests of justice so require." (§ 1203.2, subd. (b); *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420; *People v. Medina* (2001) 89 Cal.App.4th 318, 321.) The court has "very broad discretion

10

in determining whether a probationer has violated probation." (*Rodriguez*, at p. 443.)

We review the trial court's order for abuse of discretion and its factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.) "The standard is deferential: 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination. . . .' " (*Jones*, at p. 681.) In applying this test, we review the evidence in the light most favorable to the court's ruling and presume in support of the post-judgment order the existence of every fact the court could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

**2.** *Analysis*

Hernandez acknowledges "[t]he decision not to reinstate probation lies in the sound discretion of the court." But he contends the trial court abused its discretion because his "criminality stems in large part [from his] addiction." Hernandez notes that "drug addiction is a very difficult problem to address and that addicts have lots of setbacks."

Hernandez says he "was terminated from the program here because of two pretty minor rule violations." We do not agree with Hernandez's characterization of his behavior. According to the sworn testimony at the probation violation hearing, Hernandez made repeated efforts to get more pain medication than he was allowed by going to two different nurses and then

11

a third Tarzana Treatment employee. Plainly, lying to or manipulating staff members to get more drugs, by a person in a drug treatment program, is a problem. It is not surprising that Tarzana Treatment has "a low tolerance" for a patient's determined efforts to break the rules in this way.

As for Hernandez's repeated attempts to develop a relationship with a fellow patient, program personnel explained the rule, asked him to sign an acknowledgement of that rule after his first violation, warned him after his second violation, and warned him again after his third violation. When caught violating this rule a fourth time in fewer than four days, Hernandez did not take responsibility for his conduct. He did not apologize and promise to do better. Instead, he pretended not to know what the director was talking about.

On appeal, Hernandez also attempts to blame the court for his predicament, suggesting the court lured him into an execution-suspended sentence and "downplayed the possibility" that that sentence would be executed if he "messed up." The record does not support Hernandez's assertion. The court explained the People's offer, noting the "easy" "option" was "just [to] do" the four years they had offered.

But, the court continued, if Hernandez was "actually interested" in dealing with his addiction, the "harder option" would be a residential program, which the court was willing to grant over the prosecution's objection. The court told Hernandez it had "yet to send someone to prison" for a dirty test, but that if he left the program, that would be "a different matter." At the conclusion of the later sentencing hearing, the court again emphasized to Hernandez that, if he believed he had a valid excuse for leaving the program, he was to come to court

12

the next business day.  But, the court said, if Hernandez left the program and the court "[did] not hear from [him]," that would be a different situation.

In sum, Hernandez left his first court-ordered program in fewer than 10 days and was discharged from his second court-ordered program after only four days.  He was arrested twice and detained at least once.  The arrests were for (1) hiding behind bushes in the front yard of a residence at 4:30 in the morning, while possessing methamphetamine, and (2) walking onto private property, looking into the windows of the victims' parked cars, then sitting on their porch, drinking a beer at 11:30 at night.  After being discharged from Tarzana Treatment on December 5, 2023, Hernandez was detained on December 8 by Hawthorne police for a violation of section 647, subdivision (f).[7] Hernandez never came back to court and he absconded from parole supervision.  In short, Hernandez never did a single thing he was supposed to do.  The trial court did not abuse its discretion in executing the suspended sentence.

---

[7]     Accordingly, Hernandez's assertion that he had not "committed any new crime" is not accurate.  (Cf. *In re Coughlin* (1976) 16 Cal.3d 52, 56 ["probation may be revoked despite the fact that the evidence of the probationer's guilt may be insufficient to convict him of the new offense"].)

**DISPOSITION**

We affirm Tomas Michael Hernandez's conviction.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



KLATCHKO, J.*

---

\*      Judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.